ARCHER G. CROSBY *vs.* GREENLIEF W. SIMPSON & another.

Suffolk. November 20, 21, 1919. — January 13, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Corporation,* Transfer of shares. *Pledge. Notice. Agency,* Scope of authority. *Bona Fide Purchaser.*

Where the owner of shares of stock in a corporation, represented by a certificate bearing his name, signs on the back in blank a transfer of the stock "as collateral" and delivers it to his employer to enable him, using also shares of his own, to obtain a loan of money from a bank, any person who thereafter receives such certificate, whether in pledge or in rehypothecation, receives it with notice that the original transfer was conditional and that the owner's title could not be divested except by strict foreclosure.

The employer of the owner, having received the stock under the circumstances above described, pledged it to a bank as security for a loan made to him, and later, with the owner's knowledge, the stock was hypothecated to successive banks as security for new notes given to continue the loan to the employer. Finally, without the owner's knowledge, the employer made an agreement with a third person that such third person should guarantee the loan and that, if the loan were paid at any time either by the employer or the third person, the

stock should be delivered to the third person as security for whatever the employer might owe him for money advanced, interest and as a bonus, and that the third person should have power to sell the stock and account to the employer. The stock came into the third person's hands under this agreement and he demanded from the corporation a new certificate in his own name, which the corporation at first refused, but finally gave him upon his delivering to the corporation his personal agreement by way of guaranty that he was the sole owner of the stock, which the employer confirmed. After receipt of the new certificate, the third person received additional shares as a stock dividend thereon, and later cash dividends on both the original and the additional shares. In a suit in equity by the original owner to compel a retransfer to him of the shares and an accounting for the dividends declared on them, it was *held*,

(1) That the owner of the stock was not bound by the agreement between the employer and the third person;

(2) That the third person, when he received the certificate from the employer, took it with notice that the authority of the employer to transfer was limited, and that, being thus put upon inquiry, the third person was not a *bona fide* purchaser;

(3) That it was clear that the plaintiff did not intend at any time to part with or to waive his ownership of the shares of stock or to make a gift to his employer;

(4) That the plaintiff's rights were not affected by St. 1903, c. 423, § 1;

(5) That a decree should be entered ordering delivery to the plaintiff by the third person of the original shares of stock, the shares issued as a stock dividend thereon, all cash dividends on both the original and the additional shares and interest.

BILL IN EQUITY, filed in the Superior Court on February 23, 1909, and afterwards amended, against Greenlief W. Simpson and Louville V. Niles, to compel the return to the plaintiff of shares of the capital stock of the Fort Worth Stock Yards Company, a certificate representing which the plaintiff lent to Simpson and Simpson pledged to Niles, who received it with notice of Simpson's limited authority to transfer and delivered it to the corporation, but demanded and received a new certificate in his own name. The bill also sought a delivery to the plaintiff of new shares issued as a stock dividend upon the original stock and an accounting as to other dividends.

The suit was referred to a master. Material findings of the master are described in the opinion. The case was heard by *Wait*, J., upon the master's report and exceptions thereto of the defendant Niles, and upon the question of the final decree. By order of the judge an interlocutory decree was entered overruling the defendant's exceptions to the report and confirming the report, and a final decree was entered substantially as follows:

"This case came on to be heard . . . on the question of the decree to be entered, and . . . it appearing that the plaintiff was originally the owner of seventy-seven shares of the stock of the Fort Worth Stock Yards Company out of a certain certificate for one hundred and twelve shares originally pledged by the defendant Simpson to the defendant Niles, and of nineteen and one quarter shares additional issued as a stock dividend upon the said seventy-seven shares, and it appearing that the defendant Simpson wrongfully and without right delivered to the defendant Niles a stock certificate containing the said seventy-seven shares in the month of February, 1908, and that the said defendant Simpson did at that time convert to his own use the said seventy-seven shares and the nineteen and one quarter shares additional thereto hereinbefore set forth, and it further appearing that the said defendant Niles has kept and claimed the said stock as his own, and it further appearing that, as set forth in the master's report, the said Simpson and the said Niles had entered into a contract in respect thereto under the terms of which there was to be an accounting between them, which accounting has been had in this case, and it appearing that it has been found by the master that upon an accounting the said Niles does owe the defendant Simpson the amount of $123.11, and it is found by the court that the amount of $2,472.93 paid by the defendant Niles to the New England National Bank was not rightfully charged in the said accounting, while a charge for interest upon $25,000 was omitted therefrom, and it further appearing that there was no conversion of the said shares of stock hereinbefore mentioned by the said Niles, it is ordered, adjudged and decreed that the defendant Simpson owes to the plaintiff the fair market value of the said original and dividend stock as found by the master, to wit, — $80 for each share thereof, together with the dividends received upon the said stock by the said defendant Simpson or the said defendant Niles up to the time of the conversion, which said amount is $8,710.61; and it is further ordered, adjudged and decreed that judgment in the said action shall be entered for the plaintiff as against the said defendant Simpson for said amount, together with $43.44 as costs of suit, and that execution issue therefor as against the defendant Simpson.

"And it is further ordered, adjudged and decreed that the said Niles is entitled to hold the said shares of stock to secure what he

advanced to the said defendant Simpson and was entitled to under the agreement set forth in the master's report made with the said Simpson, dated September 28, 1907, and it is further ordered, adjudged and decreed that the plaintiff reach and apply in payment of the sum decreed in this case to be due from the defendant Simpson to the plaintiff, to wit,—$8,710.61, so far as it goes, the balance due from the said defendant Niles to the said defendant Simpson upon their accounting as of January, 1910, which amount is $123.11, together with interest thereon from February 22, 1909, amounting to $296.97, and $43.44, the amount of costs of suit, and that execution issue for the sum of $296.97, in favor of the plaintiff as against the defendant Niles, together with the amount of costs of suit herein specifically set forth."

The plaintiff appealed.

St. 1903, c. 423, § 1, reads as follows: "The delivery of a certificate of stock by the person named as the stockholder in such certificate or by a person entrusted by him with its possession for any purpose to a *bona fide* purchaser or pledgee for value, with a written transfer thereof, or with a written power of attorney to sell, assign or transfer the same, signed by the person named as the stockholder in such certificate, shall be a sufficient delivery to transfer title as against all persons; but no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder of record as the holder in fact until it has been recorded upon the books of the corporation, or until a new certificate has been issued to the person to whom it has been so transferred. Such purchaser, upon delivery of the former certificate to the treasurer of the corporation, shall be entitled to receive a new certificate. Stock shall not be transferred upon the books of the corporation if any instalments thereon remain overdue and unpaid. A pledgee of stock transferred as collateral security shall be entitled to a new certificate if the instrument of transfer substantially describes the debt or duty which is intended to be secured thereby. Such new certificate shall express on its face that it is held as collateral security, and the name of the pledgor shall be stated thereon, who alone shall be liable as a stockholder, and entitled to vote thereon."

*E. R. Anderson,* for the plaintiff.

*T. W. Proctor,* for the defendant Niles.

BRALEY, J.   The plaintiff by the amended bill seeks to recover seventy-seven shares of the capital stock of the Fort Worth Stock Yards Company as well as nineteen and one quarter shares, which were issued as a stock dividend upon the seventy-seven shares, and dividends in cash which have been declared and received upon all the stock.   A final decree granting relief in damages has been entered against the defendant Simpson from which he has not appealed.   But, the decree having confirmed the alleged transfer to the defendant Niles of the stock and his right to retain the dividends, the plaintiff appeals, contending, that on the master's report Niles should not only return all of the stock but account for the cash dividends.

The plaintiff's title to his original holding of one hundred and twelve shares, although in issue before the master, who apparently established his ownership, is now undisputed; but Simpson, who at the time was his employer, desiring to obtain a loan from the Montpelier National Bank, borrowed the plaintiff's certificate and, with shares of his own in the same company sufficient to make up the amount required, pledged three hundred and thirty-seven shares to the bank as collateral security.   The transfer in blank, which the plaintiff signed on the back of his certificate, states, that the shares are sold, assigned and transferred "as collateral," with a blank power of attorney with the right of substitution to transfer the shares on the books of the company. The master finds that the plaintiff subsequently received from Simpson thirty-five shares which had not been hypothecated, leaving seventy-seven shares to be returned.   The note after several renewals was transferred with the collateral to the Stock Yards National Bank of Fort Worth, Texas, for money lent by that bank to Simpson to take up the first loan, by which it was held until transferred to the Continental National Bank, which held the stock as security for two promissory notes, the proceeds of which were also used by Simpson to pay the Fort Worth bank.   It is during this period that the defendant Niles actively came to the financial support of Simpson, and the last notes after several renewals were consolidated into one note on which Niles became a guarantor under an agreement with Simpson, the substantial parts of which read as follows:

"First: Said Niles shall promptly give a written guarantee to

said Continental National Bank to pay said note of twenty-five thousand dollars . . . at its maturity; and also to pay at maturity any and all other notes given to said bank in renewal thereof and maturing on or before said January 1st, 1909, and he shall, if said Continental National Bank refuses to renew a note, and said Simpson places a loan for twenty-five thousand . . . dollars at any other banking institution, promptly give a written guarantee to pay a note for twenty-five thousand dollars . . . maturing on or before said January 1st, 1909;

"Second: Said Simpson agrees to pay said Niles for such guaranty ten thousand dollars . . . and, upon payment of said note or of any renewal thereof, or of any substitute therefor, either by himself or by said Niles, to deliver to said Niles said three hundred and thirty-seven . . . shares of stock, which shall be held for the following purposes and with the powers hereinafter stated, viz: Said Niles shall hold and may sell said three hundred and thirty-seven . . . shares of stock at any time after January 1st, 1910, provided said Simpson does not before such sale pay said Niles all sums advanced or paid by him on account of the liability herein assumed, with interest thereon, and ten thousand dollars;

"Third: Said Niles agrees to account to said Simpson for any surplus to which he may be entitled upon a sale of the stock; and upon such an accounting, or upon payment of all sums to which he is entitled under this agreement, to deliver said three hundred and thirty-seven . . . shares of stock to said Simpson.

"This agreement shall bind the respective parties and their executors and administrators."

Although the plaintiff is found to have known of the rehypothecation to the banks succeeding the first lender, he was ignorant of this agreement or that at the time of its execution Simpson had given an order on the Continental National Bank to deliver the plaintiff's certificate to Niles upon his payment of the indebtedness, the amount of which remained unchanged. But having paid the bank and ultimately received all the certificates, Niles without the knowledge of the plaintiff made application to the company to issue to him in his own name a new certificate for all the shares. The plaintiff's ownership, shown on the face of the certificate, coupled with his signature to the transfer in blank preceded by the words "as collateral," was sufficient notice not merely to the

first pledgee, but to the subsequent pledgees as well as to Niles, that the original transfer was conditional. *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 420, and cases cited. The plaintiff's title consequently could not be divested except by strict foreclosure, or by an absolute transfer from him; or, in other words, the source and nature of the title fully appeared on the certificate itself. *Jacobs* v. *Saperstein,* 225 Mass. 300, 303. *Mayor & City Council of Baltimore* v. *Whittington,* 78 Md. 231. *Thomas* v. *Flint,* 123 Mich. 10.

The defendant Niles, moreover, when he applied for the transfer, was expressly informed by the assistant secretary of the company, that "there should also be an assignment from Mr. Crosby, itemizing the certificates . . . which he transfers," and "the assignment by Mr. Crosby to the Montpelier Bank was for the purpose of collateral." It was not until the defendant had given his personal guaranty to the company and Simpson had informed the secretary that he was the sole owner of all the certificates, and directed the company to pay the dividends to the defendant, that the new certificate for three hundred and thirty-seven shares was issued to Niles in his own name, on which he has received the stock dividend and the cash dividends previously mentioned. It is manifest that the plaintiff is not bound by the secret agreement between Simpson and Niles, and neither of the twain by what had been done acquired any greater title than that held by the pledgees.

The defendant, however, contends in avoidance, that when the pledge was transferred to the Fort Worth bank the plaintiff consented to an absolute passing of his title, and thereby terminated his ownership; or that by force of the form of transfer, to which the master finds he assented, he is now estopped from claiming the shares or any interest therein. But the separate blank assignment by the Montpelier Bank, although it was unrestricted in form and the plaintiff knew and assented to it, operated only as a transfer of the bank's title under the pledge. The plaintiff's assignment and power of attorney has never been used, but remained in blank. It is urged that the plaintiff by his assent constituted the bank his agent to transfer title with the same effect as if the bank owned the shares, thus depriving himself of the stock, which transaction of course would directly enure to the sole benefit of Simpson,

who in all the migrations of the certificate never has appeared thereon even as the ostensible owner. The plaintiff at no time conferred any authority upon Simpson to act as a general agent. His authority was limited to making a pledge of the stock for his own debt, the sole purpose for which it was borrowed. And the defendant, dealing with a special agent, was bound to inquire and ascertain the extent of Simpson's powers. *A. Blum Jr.'s Sons* v. *Whipple,* 194 Mass. 253. *Lovett, Hart & Phipps Co.* v. *Sullivan,* 189 Mass. 535. *Hall* v. *Bates,* 216 Mass. 140. *Castle* v. *Mayer,* 217 Mass. 38. The bank's assignment furthermore does not purport to be by the bank acting as the agent of the plaintiff. It runs in the name of, and is executed by the bank acting through its cashier and vice president. It is true that the master finds as we have said that the plaintiff knew of, and assented to the transfer to the Fort Worth bank, but we are satisfied on the entire record that the plaintiff never intended to part with, or to waive his ownership, or to make a gift to Simpson. We perceive nothing in St. 1903, c. 423, § 1, which changes the nature of the transaction. If the words "as collateral" had been omitted, then the certificate indorsed in blank would have been a sufficient delivery to transfer the title as against all persons. *Gurley* v. *Reed,* 190 Mass. 509, 512.

The defendant fails to bring himself within the principle that a purchaser for value in good faith from one entrusted with the apparent title and absolute ownership of personal property is protected from the prior right of the true owner and pledgor because the pledgor is estopped from showing the true state of the title. *Munroe* v. *Stanley,* 220 Mass. 438, 445.

The master's finding that the plaintiff "became the owner of the one hundred and twelve shares of stock, . . . on April 22, 1902, and still is the owner of seventy-seven shares" must stand.

The relief asked is for specific performance against each defendant. The decree, after reciting that Simpson is chargeable with conversion and assessing damages therefor, held Niles liable only for a very small sum which he owed Simpson on an accounting as between them. While Simpson undoubtedly can be cast in damages, the master's report shows that the value of Simpson's own stock, which Niles received, is more than sufficient to discharge Simpson's indebtedness on the note with interest. The plaintiff,

although bound by the pledge of his stock for the note or notes thereby secured, is not bound to pay the "bonus" as provided in the contract of guaranty.

It follows that the decree must be reversed, and a decree with costs is to be entered which not only shall grant appropriate relief as to Simpson, but directs Niles to deliver to the plaintiff a certificate for "ninety-six and one quarter shares" of the capital stock of the Fort Worth Stock Yards Company, and to account for all cash dividends which he has received on this stock, with interest thereon from the date of filing the amendment to the bill to the date of the entry of the decree.

*Ordered accordingly.*