PATRICK J. EGAN'S CASE.

Suffolk.   November 2, 1953. — January 5, 1954.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Street risk.
    *Proximate Cause.*

Evidence in a workmen's compensation case that while the employee, a
    taxicab operator, was driving along a street at night in the course
    of his work he was signalled to stop and requested to go to a police
    station for help by a police officer on the sidewalk holding three men
    at bay with a gun, that the situation was tense, that the operator be-
    came frightened when one of the men put his hand in his pocket and
    the officer threatened to shoot him unless he kept his hands up, and
    that the operator did not feel right when he got to the police station,
    together with certain medical testimony, warranted findings that a
    "brain difficulty" which was suffered by the operator and ultimately
    brought about loss of speech originated at the time of and was causally
    connected with such episode on the street and constituted an injury
    arising out of and in the course of his employment.

CERTIFICATION to the Superior Court of a decision by
the Industrial Accident Board under the workmen's com-
pensation act.

The case was heard by *Rome, J.*

*Dana J. Kelly,* (*John B. Brennan* with him,) for the
insurer.

*Everett J. Slate,* for the claimant.

COUNIHAN, J.   This is an appeal by an insurer from a
decree of the Superior Court awarding compensation to the
employee in accordance with a decision of the reviewing
board of the Industrial Accident Board which affirmed and
adopted the findings and decision of the single member.

The single member found that the claimant was an
employee of the assured on the morning of March 3, 1949.
He further stated, "I find that he was not a volunteer to
the police action which transpired on that morning. [This
will be described hereinafter.] I find that his part was

merely an ordinary risk of the street and, as such, he was still within the scope and purview of his employment as a cab driver." He also found that "These [loss of speech and paralysis] were manifestations of the personal injury arising out of and in the course of his employment." The decree declared that the claimant "did sustain a personal injury arising out of and in the course of his employment." We think that the decree was correct.

One of the issues before us is whether the injury which the employee received comes within the provisions of G. L. (Ter. Ed.) c. 152, § 26, as appearing in St. 1943, c. 529, § 8, the pertinent part of which reads, "If an employee . . . receives a personal injury arising out of and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer . . . he shall be paid compensation . . . ." The provision relating to "ordinary risk of the street" was inserted in the workmen's compensation statute by St. 1927, c. 309, § 3, "as an additional class of compensable personal injuries." *Higgins's Case*, 284 Mass. 345, 349. There is also the question as to whether the incapacity of the claimant is causally related to the injuries sustained by him. We think that both of these issues must be determined in favor of the employee.

There was evidence from which it could be inferred that on Thursday, March 3, 1949, at about 1:45 A.M. the claimant, who was employed by the assured, was driving a taxicab back to Boston after delivering a passenger in Malden. As he drove along Main Street, Everett, he slowed down because he noticed some unusual activity on the sidewalk. He saw a police officer in uniform with a gun in his hand holding three young men at bay. The officer called upon him to stop and he did so. The officer then requested him to go to the police station for help. In its brief the insurer admits that "at that precise moment one of the arrested men put his hand in his pocket and the officer threatened to shoot the man unless he kept his hands up." The em-

ployee drove to the police station and then drove some
police officers back to the scene of the trouble. The em-
ployee remained at the scene for about ten to fifteen minutes
and then drove the cab back to the garage in Boston. When
he saw one of the arrested men put his hand in his pocket
and heard the officer threaten to shoot, he was scared and
he did not feel right when he got to the police station.
He had difficulty in talking and swallowing. When he got
back to the garage he was nervous and excited. There
was further evidence that the officer was outnumbered at
the scene of the trouble and that the atmosphere was tense.

The employee was a night man who usually began work
about 5 P.M. and continued until 2 to 4 A.M. He worked
the shift of March 3 and 4, but not the shift of March 4
and 5 because he was nervous and excited and there was a
difference in his voice and manner of speech. He worked
again on the shift of March 5 and 6 which was a Saturday
night and Sunday morning. His throat was still bothering
him, his speech was affected, and he was unable to swallow.
At breakfast on Sunday morning in the presence of his
wife he was suddenly seized with a spell of blindness and
his voice left him. He was still unable to talk at the time
of the hearings on May 6 and June 10, 1952. On March 7,
1949, he was admitted to St. Elizabeth's Hospital in Brigh-
ton where he stayed until March 23, 1949, when he was
discharged, improved. The hospital record which was in
evidence showed a diagnosis of "Cerebral Hemorrhage:
Pseudobulbar Palsy." A medical expert, in answer to a
hypothetical question which embraced substantially all the
facts heretofore recited as well as the hospital record, tes-
tified that in his opinion "there is a relationship between
the brain difficulty which this man had and the experience
described with the police officer . . . I feel he probably
had a minute hemorrhage at the time which later became
more extensive" and brought about his inability to speak.

The single member adopted the opinion of this medical
expert that "there is a relationship between the brain
difficulty which this man had and the experience described

with the police officer." He found that "the total incapacity of the employee since March 6, 1949, is causally related to said injury." We cannot say upon the evidence that the findings of the single member which have been affirmed and adopted by the reviewing board were wrong. "It is settled that the findings of a reviewing board are to be sustained whenever possible, and they are not to be reversed unless they are lacking in evidential support or are tainted by an error of law." *Paltsios's Case*, 329 Mass. 526, 528, and cases cited.

The more difficult question to determine is whether the employee's injury arose out of and in the course of his employment. We think it could have been so found. The rule has long been established that when the public street is the employee's place of work it virtually becomes his workshop and he may be exposed to dangers incident to the use of the streets in the same manner that a factory workman is subjected to the perils of the factory. *Keaney's Case*, 232 Mass. 532, 534. *Moran's Case*, 234 Mass. 566, 568. Indeed this rule was recognized in both the majority and minority opinions in *Higgins's Case*, 284 Mass. 345, for at page 348 the majority said, "Where an employee works in the street, as a teamster does, a causal connection between his employment and a risk of the street is not hard to find," and at page 352 the minority said, "Where, however, the place of employment was the street, as is that of a teamster, it had been held that an injury received on the street was causally related to the employment and was compensable under the workmen's compensation act. . . . In the latter case it would have been of no consequence whether the injury arose from ordinary risks of the street or from exceptional and uncommon risks of the street. So long as it arose out of and in the course of the employment in the sense that it had a causal connection with the employment, it was compensable. . . . The class of employees whose place of employment was the street was by no means negligible, but included, beside teamsters and truckmen, numerous municipal employees."

In *Souza's Case*, 316 Mass. 332, at page 334, it was said, "The question is whether his employment brought him in contact with the risk that in fact caused his death. . . . The inquiry has been whether his employment exposed him to the risk, whatever it was, which actually caused the injury"; and quoting from *Caswell's Case*, 305 Mass. 500, at page 502, "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." See *Milliman's Case*, 295 Mass. 451, 453; *Cahill's Case*, 295 Mass. 538, 543; *McLean's Case*, 323 Mass. 35, 38.

In the instant case the employee was using the street as his workshop. While so doing he was signalled by a police officer in uniform and failure to stop would have subjected him to possible criminal prosecution and payment of a fine. G. L. (Ter. Ed.) c. 90, § 25. He was not a volunteer. When he stopped he saw the officer holding three men at bay with a gun. The officer was outnumbered and the situation was tense. When one of the men under arrest put his hand in his pocket the officer threatened to shoot him if he did not keep his hands up. The employee was scared and he did not feel right when he got to the police station. On these facts and the testimony of the medical expert it is fair to infer that the emotional disturbance which brought about the resulting paralysis began before he started to drive to the station house at the request of the officer. *Charon's Case*, 321 Mass. 694, 698.

The insurer contends that the claimant ceased to be an employee of the assured and became an employee of the city of Everett when he responded to a request of the police officer for help. It relies upon G. L. (Ter. Ed.) c. 268, § 24, which provides punishment for failure to assist a police officer in the execution of his duties in a criminal case, and upon G. L. (Ter. Ed.) c. 41, § 100, as amended, which provides for indemnification by a city to a person for damages sustained by him in responding to such a call for assistance. Because of what we have said we find no merit in

this contention. See *Matter of Babington* v. *Yellow Taxi Corp.* 250 N. Y. 14.

Costs of this appeal under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, shall be allowed by the single justice.

*Decree affirmed.*