65 N.J. Super. 592 (1961)
168 A.2d 265
CHRISTINA COLEMAN, PETITIONER-RESPONDENT,
v.
THE ANDREW JERGENS COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided February 17, 1961.
Mr. Aaron Gordon, attorney for respondent.
Messrs. Mead, Gleeson, Hansen & Pantages (Mr. Arthur F. Mead, appearing), attorneys for appellant.
*593 MASUCCI, J.C.C.
The respondent appeals from an award to the petitioner on a claim that a heart condition which she suffered arose out of and in the course of her employment with the respondent.
The petitioner filed a cross-appeal from the dismissal of her petition involving the same claim but based on the theory that the same constituted an occupational disease.
In view of the recent holding in the case of Joy v. Florence Pipe Foundry Co., 64 N.J. Super. 13 (App. Div. 1961), another heart case, that it did not consider its holding therein "a judicial broadening of the legislative categorization of occupational diseases" and of its binding effect on this court, the petitioner's cross-appeal will be dismissed without further consideration and the court will proceed to a consideration of the issues involved in the respondent's appeal.
Petitioner was in the employ of respondent for a period of 15 years to August 15, 1957, the day of her heart attack. She started as a comptometer operator. After ten years in that position, she was assigned to a billing job, which required typing. She continued on said last assignment for about three months when she began having hypertension. She was then transferred to the bookkeeping department and remained in that position for about three months, and was then employed as a bookkeeper and order clerk in respondent's credit department, covering all of the department's credits and the balancing of various departments. During this period other work was assigned to her, such as order clerk work, and the operation of TWX machines for sending and receiving messages to and from respondent's local office and its Cincinnati office. These extra assignments were only given to petitioner from time to time, but during the month of August 1957 she had not been requested to do, nor did she do, any of the extra assignments mentioned.
On the morning of August 15, 1957 she started working at 8 A.M. doing her regular work, as credit analyst in an air conditioned office, which included correspondence in connection with said work. At 10 A.M. she began to balance *594 her account, a semi-monthly requirement. She took her cards to the adding machine to check if they would balance against her previous month's balance, and found a discrepancy of $20. She claims she felt upset and feared rebuke if the same did not balance by noontime, so she decided to work through her lunch hour until 1 P.M., looking through vouchers, going to the ledger book, and carrying it for a distance of about 50 feet and back to the accounting department. The book weighed 8 1/2 pounds. She stated that the carrying of the book did not bother her. Although she had one of the girls help her, the error was not found.
After returning the book she returned to her desk and then felt terrific pains across her chest, felt faint and told one of the girls. Petitioner was taken to the nurse and then to Columbus Hospital by ambulance, and there found to have suffered a heart condition. She remained in the hospital for a period of three weeks and was then advised by her doctor not to return to work because it was too dangerous and might subject her to too much tension which might cause a recurrence of her heart condition.
Although petitioner admitted that mistakes did happen in various departments, she stated that the failure to balance her books was the first occasion on her part. This statement was contradicted by two or three of her co-workers, who stated that it had happened on other occasions, that there was no immediate time limit for trial balances taken in the middle of the month, and that same could be done and balanced as late as the 20th of the month, said trial balance being only an inter-department balance.
The court could almost take judicial notice of the fact that many trial balances do not balance on the first trial. The court finds that although it is naturally desirous that trial balances come out correct on the first trial, any failure in such respect by a person of normal health would not and should not cause any embarrassment or fear of censure from the superiors. However, we are not considering the reaction of a person of normal health, but a person who was *595 suffering from hypertension and beset with family problems and fears of insecurity.
The respondent had a "merit rating system" to evaluate its employees on the basis of quality and quantity of work, attitude, tardiness, absenteeism, etc. The rating was appraised semi-annually on the basis of monthly ratings.
It appears that the only demerits the petitioner could or did suffer were on the basis of tardiness, and in spite of same petitioner was successful in obtaining merit increases and promotions to the highest paying position in the department.
The worries, concerns and irritations complained of are the usual incidents of practically all employments, especially employments of long durations, with age advancing, interest waning, monotony ensuing and fear of the future, either factually or assumed.
The ability to withstand even the ordinary stresses and strains of living and working depends upon and varies with the individual. Here the fears, stresses and strains complained of by the petitioner, coupled with her hypertension, age and feeling of insecurity, lead to the irresistible conclusion that such fears, stresses and strains suffered on the day in question either caused or contributed to bring about the petitioner's heart attack. Is it sufficient to justify an award under the Workmen's Compensation Act?
We start first with the principle that injury or death from heart disease is presumed to be the result of natural physiological cause and the burden is upon the claimant to prove by a preponderance of the probabilities that the employment was a contributing cause of the injury or death. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958).
Ciuba quoted Professor Larson's statement that "`by accident' is now deemed satisfied * * * `either if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties,' and accordingly, `if the strain of claimant's usual exertions causes collapse from heart weakness * * * and *596 the like, the injury is held accidental.'" (Emphasis supplied.)
Again, in Ciuba, it is stated that:
"* * * the accidental quality of the injury cannot be made to depend upon a distinction so unreal,  i.e., between the `usual' and the `unusual' strain or exertion in the work-performance that is shown to have been the causative agency; in either event, the injury would come by accident arising out of and in the course of the employment; * * *" (Emphasis supplied.)
In Loew v. Borough of Union Beach, 56 N.J. Super. 93, 105 (App. Div. 1959), it was stated that although under the Ciuba rule it was no longer necessary to prove that the injury was the result of "unnecessary strain," it was nevertheless of some probative significance in resolving the issue of causal relationship between the work and the heart attack.
And in Jacobs v. Kaplan, 56 N.J. Super. 157 (App. Div. 1959), although Ciuba was construed as eliminating the necessity of proving an unsual work-induced strain, it was stated that the rejection of the "unusual strain" doctrine added considerably to the difficulty of determining whether or not an accident is proved where, as here, any exertion, whether the result of work or of the ordinary strains and stresses of living, could be a competent producing cause of the attack. It was also stated that in cases awarding compensation there was invariably a showing of a particular work-induced happening or event precipitating the cardiac episode, and the court then concluded that
"* * * in a heart case in which it appears that a previously diseased heart breaks down or otherwise fails while the employee is at work, a claimant has the burden of establishing by a preponderance of probabilities that the work effort preceding the occurrence of the failure entailed a stress or strain which was greater than the ordinary stresses or strains of living and so was an event or happening beyond the mere employment itself." (Emphasis supplied.)
In the Joy case, the latest case on the subject, it was held that it is still necessary to show something more identifiable *597 than the ordinary stress and strain of living and working to warrant a finding of causal relationship between the work and the heart failure.
It is somewhat difficult to harmonize the holdings in the cases above referred to except on the basis of the emphasis placed on the character and type of stresses and strains and circumstances involved, and that something more identifiable should be proven as producing or tending to produce the heart failure or to accelerate its failure.
The Joy case qualifies the burden of proof rule, holding that where the circumstances warrant an inference that an injury is work-connected, the burden of showing that some other cause for which the employer is not responsible produced the injury is upon the respondent. The burden of production and, perhaps, even persuasion, is upon the employer to show that an apparently work-connected injury is the result of the employee's physical condition for which the employer is not legally responsible.
In evaluating this case in the light of the principles in the above cited cases and the factual basis hereof, the essential question is whether the strain or exertion incident to petitioner's work, specifically on August 15, 1957, accelerated her heart attack.
The petitioner produced Dr. Michael Charles Ritoto and Dr. Saul Lieb. The respondent produced Dr. Jerome G. Kaufman.
They all agreed that the petitioner suffered a myocardial infarction and that she had been previously suffering from hypertension.
Doctors Ritoto and Lieb were of the opinion that from the cumulative effect of her pre-existing hypertension, her family troubles, her tardiness on many occasions, generally due to no fault of hers but to her daughter's, the system of merit rating kept by the respondent to evaluate employees' services and utility, together with her age, causing her such contant feeling of insecurity, she became particularly susceptible to the stress and strain occasioned by *598 her inability to locate an error of $20 in her trial balance, and these factors, plus the carrying of a book weighing even 8 1/2 pounds, all were sufficient to cause or precipitate the myocardial infarction of August 15, 1957.
Dr. Kaufman, produced by the respondent, disregarded the stress and strain that petitioner claimed to have suffered on August 15, 1957, and in addition stated that he did not think such stress and strain were sufficient to be a contributing factor of said incident.
However, he does admit that if the woman actually had a "true emotional stress and strain then you may conclude from my opinion that such stress and strain could be a contributing factor as to that incident."
It is further significant that Dr. Kaufman at no time explained or defined the amount of stress and strain that would be sufficient to constitute a contributing factor or a true emotional stress and strain. The court gains the impression that he probably referred to or had in mind that an unsual stress and strain would be required to warrant the conclusion of either aggravating or accelerating the attack. Contra, Ciuba, above.
However, in Ciuba it was held that:
"* * * the accidental quality of the injury cannot be made to depend upon a distinction so unreal,  i.e., between the `usual' and the `unusual' strain or exertion in the work-performance that is shown to have been the causative agency; * * *."
Respondent cites the Jacobs v. Kaplan case, indicating that compensation will be awarded upon a showing "of a particular work-induced happening or event precipitating the cardiac episode," and "lacking proof of an `event or happening' beyond the mere employment itself" there could be no recovery.
This court's construction of the Jacobs v. Kaplan case is that it applies only in cases where "a heart has deteriorated to such a condition so that any exertion becomes an over-exertion," which is not the situation in the instant case; *599 at least, there appears to be no such evidence or contention to that effect. If by a "stress or strain which was greater than the ordinary stress or strains of living" it refers to unusual stress or strain, then it is contrary to the holding in the Ciuba case. This court is bound by the principle laid down in the last-cited case.
The recent Joy case explains the holding in the Jacobs v. Kaplan case to require only something more identifiable than the ordinary stress and strain of living and working.
The court accepts the testimony of the petitioner. There is nothing in the case to contradict her. Even assuming that some of the causative factors were unrelated to her employment as respondent properly urges, as indicated in the petitioner's testimony, her fears of errors by reason of the demerit system, her feeling of insecurity of employment, which would naturally be accentuated as one grows older because of the prevailing tendency of employers to terminate employment of people over a certain age, regardless of their continued ability or efficiency, and the cause for greater worry and anxiety, all would result in greater susceptibility to the strains and stresses described by the petitioner. It is difficult to conceive that a person in her physical and emotional condition would not be subject to and have less resistance to even normal errors, and thus suffer greater strain and stress than a person of normal health and emotional stability.
Although it may be true that the occlusion and emotional stress and strain may have been coincidental, it could have precipitated the occlusion to which the petitioner was predisposed by disease. It is significant, however, that the coronary infarction which brought on her disability occurred on the very day of her error in trial balance and her anxiety relative thereto.
Justice Heher, in Weisenbach v. Borough of New Melford, 134 N.J.L. 506 (Sup. Ct. 1946), said "Mere coincidence is not a permissible deduction in the face of evidence which, *600 according to the teachings of long experience, demonstrates a causal relationship."
As stated in the Ciuba case, the measure of the weight of the evidence "is `the feeling of probability which it engenders.'"
Under the evidence, it is more probable that a person of petitioner's age, emotional fears and hypertension would suffer such stresses and strains by reason of her error in her trial balance, superimposed on her other troubles, as would be sufficient to precipitate or accelerate the resulting coronary infarction, and this court so finds.
This court is in doubt as to the extent of the permanent disability and would appreciate hearing argument on that issue on Friday, March 10, 1961, at 10 A.M.