CITY OF BOULDER, State Compensation Insurance Fund, Industrial Commission of Colorado, Mike L. Baca, Richard J. Wise, and Peter Nims, individually and as Members of the Industrial Commission of Colorado, and Charles McGrath, Director of the Division of Labor, Petitioners,

v.

Barbara E. STREEB, Suzanne E. Streeb and Andrew D. Streeb, widow and dependent children of Ronald Streeb, Deceased, Respondents.

No. 83SC170.

Supreme Court of Colorado,
En Banc.

Sept. 30, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Aragon, Asst. Atty. Gen., Denver, for petitioners, Indus. Com'n, Members of the Com'n, and Director, Div. of Labor.

William J. Baum, Pamela L. Musgrave, Denver, for petitioner, State Compensation Ins. Fund.

Thorburn, Sakol & Throne, Barre M. Sakol, Boulder, for respondents.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Streeb v. City of Boulder*, 671 P.2d 436 (Colo.App. 1983), which vacated an order of the Industrial Commission ("commission") denying death benefits under section 8–52–102, 3 C.R.S. (1984 Supp.),[1] of the Worker's Compensation Act ("Act") to the widow and children of the decedent, Ronald Streeb, whose death was allegedly caused by a cardiac arrhythmia, which in turn was allegedly brought about by the combination of a preexisting congenital heart condition, mitral valve prolapse, and job-related mental stress. The referee denied compensation and concluded that, regardless of whether mental stress was the cause of a fatal cardiac arrhythmia, the stress itself could not "be found to be derived from an injury or occupational disease arising out of and in the course of [the decedent's] employment" and that, therefore, "the question of whether that stress was the proximate cause of [the decedent's] death is not and will not be addressed." The commission affirmed the decision of the referee, and the widow and children appealed to the court of appeals. The court of appeals, after initially ruling that "[a]ny reasonable doubt as to whether a compensable injury arises out of and in the course of employment must be resolved in favor of the claimant," concluded that "[e]vidence of job stress accompanied by emotional or mental tension may be sufficient to support an award for compensation." 671 P.2d at 438. The court accordingly vacated the commission's order and remanded the case for further findings by the referee consistent with its ruling. We conclude that the court of appeals incorrectly defined the burden of proof applicable to a claimant in a worker's compensation proceeding, that the court correctly determined that job-related mental or emotional stress may constitute the cause of an injury or occupational disease under the Act, and that the referee failed to apply the appropriate legal standards in determining whether the decedent's injury arose out of and in the course of employment. We therefore affirm in part and reverse in part, and we remand the case to the court of appeals with directions to return the matter to the commission for a further evidentiary hearing by the referee.

I.

The decedent, Ronald Streeb, was a lieutenant in the Boulder Fire Department

1. Section 8–52–102, 3 C.R.S. (1984 Supp.), provides as follows:

(1) The right to the compensation provided for in articles 40 to 54 of this title, in lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur:

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted.

("department") and had worked approximately eleven years as a fire fighter before his death on November 16, 1979. His job consisted of supervising a fire engine company and directing fire fighting activities at the scene of fires. The decedent was forty years old at the time of his death. Following his death, his widow and children filed a claim for worker's compensation benefits.

According to the testimony of the decedent's doctor, Dr. William Hilty, the decedent had a preexisting heart condition known as mitral valve prolapse, which consisted of a thickened heart valve that would not completely close. The decedent also suffered from hypertension that was controlled through medication. Dr. Hilty testified that it is extremely rare for this condition to prove fatal in a person of the decedent's age. Where the condition is fatal, it normally is due to cardiac arrhythmia, which is a form of irregular heart rhythm. A common factor in producing cardiac arrhythmia, according to the doctor, is emotional or psychological stress, which causes the body to produce adrenaline and thereby trigger rhythm disturbances in the heart beat.

Uncontroverted testimony from the Boulder fire chief, coworkers of the decedent, and the decedent's widow established that the decedent suffered a great deal of tension and frustration relating to his work. In 1978 the decedent had unsuccessfully applied for the position of fire chief. Once the new chief took office, several employees who were junior in rank to the decedent were promoted to positions superior to his. Shortly before his death the decedent had applied for the position of captain, but he was similarly rejected. The decedent also underwent full paramedical training on his own time because he strongly believed that fire fighters ought to be trained to deal with medical emergencies. He thereafter submitted to the department numerous proposals that would have mandated such training for all fire fighters. These proposals, however, were consistently rejected. The decedent had been reprimanded by the department in the past for persisting in these efforts. Finally, the decedent was disturbed by the department's policies requiring that he communicate the concerns of the fire fighters in his charge to his immediate supervisor rather than directly to the chief. The evidence indicated that the relationship between the supervisory hierarchy and the employees was generally tense due to differences in managerial philosophy, although the decedent himself was never the individual target of any of the policies adopted by the department.

The decedent's frustration over his situation at work was so great that on occasion, according to his widow, "you could see the tension in his body." The evidence established that there were no other significant sources of mental stress in the decedent's life. The decedent had been on vacation for a period of ten days prior to his death, during which time he did an unspecified amount of construction work. He was to return to work on the day on which he died.

The likely cause of the decedent's death, according to Dr. Hilty, was an irregular heart rhythm which, when combined with mitral valve prolapse and job-related emotional stress, resulted in the fatal arrythmia. The imminence of the decedent's return to work, according to the doctor, may have exacerbated his stress level by increasing his tension just prior to his scheduled return to work.

The referee found in pertinent part as follows: that the decedent suffered from a congenital heart condition known as "mitral insufficiency" and died of cardiac arrhythmia; that the decedent did not have a heart attack; that he had no significant financial or domestic problems which subjected him to stress; and that the main sources of stress in the decedent's life were his failure to receive a promotion within the fire department, the rejection of the paramedical proposals made to his superiors, and the cumulative tension experienced resulting from the lack of adequate communication with his superiors and his disagreement with their management philosophy. The referee and the commission de-

nied the claim for compensation because, in their view, the stress experienced by the decedent did not qualify as "an injury or occupational disease arising out of and in the course of employment," thereby rendering unnecessary any resolution of the question of the proximate cause of the decedent's death.

In reversing the order of the commission and remanding the case for further evidentiary hearing, the court of appeals stated:

> Any reasonable doubt as to whether a compensable injury arises out of and in the course of employment must be resolved in favor of a claimant, and the mere fact that an injury befalls a claimant at a moment when he is not performing labor for his employer does not necessarily prove that the injury did not arise out of and in the course of employment.... Evidence of job stress accompanied by emotional or mental tension may be sufficient to support an award for compensation.

> Under the evidence presented, there is no basis for the referee's finding that the stress was not associated with decedent's employment, and thus, its role as the cause of decedent's death should have been addressed. We therefore hold that the commission erred in not remanding this matter to the referee to make specific findings on whether the arrythmia [sic] which precipitated the death was caused by job related stress arising out of and in the course of employment. (citations omitted).

We granted certiorari to consider whether the court of appeals improperly defined the standard of proof applicable in worker's compensation cases and whether job-related stress may constitute the legal cause of a compensable injury under the Act. We discuss these issues in the order stated and then consider whether the referee employed the proper legal standard in denying the claim of the widow and children.

## II.

■ The initial issue relates to the appropriate burden of proof in a worker's compensation proceeding. A claimant in a worker's compensation case has the burden of proving entitlement to benefits by a preponderance of evidence. *Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850 (Colo.1983); *State Compensation Insurance Fund v. Kindig,* 167 Colo. 32, 445 P.2d 72 (1968); *Baca County School District v. Brown,* 156 Colo. 562, 400 P.2d 663 (1965). While the provisions of the Act are to be interpreted liberally in favor of the rights of injured workers, *e.g., Padilla v. Industrial Commission,* 696 P.2d 273 (Colo.1985); *James v. Irrigation Motor and Pump Co.,* 180 Colo. 195, 503 P.2d 1025 (1972), this rule of liberal construction does not lessen the degree of proof which a claimant must meet in order to receive an award under the Act. The court of appeals' statement that "[a]ny reasonable doubt as to whether a compensable injury arises out of and in the course of employment must be resolved in favor of a claimant" creates a virtual presumption of compensability and, as such, represents an incorrect statement of the law regarding the burden of proof applicable to a worker's compensation proceeding. We therefore reverse that part of the judgment requiring the referee and commission to apply this presumption of compensability upon remand.

## III.

■ We next address whether the court of appeals erred in holding that job-related mental or emotional stress may constitute the cause of a compensable injury under the Act. We are satisfied that job-related mental or emotional stress may cause an injury or occupational disease which will support an award for an ensuing disability or death resulting from the injury or occupational disease.[2]

---

**2.** Section 8–41–108(2), 3 C.R.S. (1984 Supp.), defines the terms "accident" and "injury" to include "disability or death resulting from accident or occupational disease as defined in sub-

section (3) of this section." Subsection (3) defines an occupational disease as

"a disease which results directly from the employment or the conditions under which work

Stress is widely recognized by medical authorities as a disease in its own right and has been implicated as the cause or partial cause of many other diseases and disabilities. *See, e.g.,* Kaplan, H. & Sadock, B., *Modern Synopsis of Comprehensive Textbook of Psychiatry/III* § 24.1 (1981). "[U]ndue anxiety, strain and mental stress from work are frequently more devastating than a mere physical injury, and courts have taken cognizance of this fact in sustaining awards where no physical impact was present." *Klimas v. Trans Caribbean Airways, Inc.,* 10 N.Y.2d 209, 213, 176 N.E.2d 714, 716, 219 N.Y.S.2d 14, 16 (1961). *See, e.g., Lamb v. Workmen's Compensation Appeals Board,* 11 Cal.3d 274, 520 P.2d 978, 113 Cal.Rptr. 162 (1974) (employee's extreme conscientiousness over work

and sensitivity to criticism by superiors produced job-related stress which in turn caused compensable cardiac arrhythmia); *City Council of Augusta v. Williams,* 137 Ga.App. 177, 223 S.E.2d 227 (1976) (heart attack due to emotional stress resulting from policeman's fear of losing job and anxiety over patrol duties constituted compensable injury); *McDonald v. International Paper Co.,* 406 So.2d 582 (La.1981) (heart attack or cerebral hemorrhage produced by sustained job-related anxiety was compensable); *Hammons v. City of Highland Park Police Department,* 421 Mich. 1, 364 N.W.2d 575 (1984) (police officer's suicide resulting from anxiety and depression from unsuccessful efforts to obtain promotion gave rise to compensable claim).[3] We conclude, therefore, that as long as

was performed, which can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as a proximate cause and which does not come from a hazard to which the worker would have been equally exposed outside of the employment." In some cases the ultimate injury may well be the same as the occupational injury or disease arising from employment. For example, the worker's employment might cause him to develop a respiratory ailment which is itself the injury for which compensation benefits are sought. In the present case, however, the job-related stress is clearly distinguishable from the ultimate injury suffered by the decedent, which was death due to cardiac arrhythmia.

**3.** Professor Larson in his treatise on worker's compensation law lists nineteen jurisdictions including Colorado that have found compensability when a mental or emotional strain results in a distinct physical injury and only one jurisdiction, Ohio, holding to the contrary. 1B A. Larson, *Workmen's Compensation Law* § 42.21 (1985 ed.). These nineteen jurisdictions are as follows: Arkansas, *e.g., Travelers Ins. Co. v. Heidelberger,* 267 Ark. 971, 593 S.W.2d 70 (App. 1980) (ulcer); California, *e.g., Lamb v. Workmen's Comp. App. Bd.,* 11 Cal.3d 274, 113 Cal. Rptr. 162, 520 P.2d 978 (1974) (cardiac arrhythmia); Colorado, *e.g., Marotte v. State Compensation Ins. Fund,* 145 Colo. 99, 357 P.2d 915 (1960) (heart attack); Connecticut, *e.g., Donato v. Pantry Pride (Food Fair),* 37 Conn.Sup. 836, 438 A.2d 1218 (1981) (heart attack); Florida, *e.g., Tracy v. Americana Hotel,* 234 So.2d 641 (Fla.1970) (cerebral aneurysm); Idaho, *e.g., Roberts v. Dredge Fund,* 71 Idaho 380, 232 P.2d 975 (1951) (stoppage of heart); Indiana, *e.g., Harris v. Rainsoft*

*of Allen County, Inc.,* 416 N.E.2d 1320 (Ind.App. 1981) (heart attack); Louisiana, *e.g., Ferguson v. HDE, Inc.,* 270 So.2d 867 (La.1973) (stroke); Maryland, *e.g., J.N. Geipe, Inc. v. Collett,* 172 Md. 165, 190 A. 836, 109 A.L.R. 887 (1937) (paralysis); Massachusetts, *e.g., Egan's Case,* 331 Mass. 11, 116 N.E.2d 844 (1954) (cerebral hemorrhage); Michigan, *e.g., Klein v. Len H. Darling Co.,* 217 Mich. 485, 187 N.W. 400 (1922) (fatal shock); Mississippi, *e.g., Insurance Dept. v. Dinsmore,* 233 Miss. 569, 102 So.2d 691, *aff'd on rehearing,* 233 Miss. 569, 104 So.2d 296 (1958) (cerebral thrombosis); New Jersey, *e.g., Coleman v. Andrew Jergens Co.,* 65 N.J.Super. 592, 168 A.2d 265 (1961) (cerebral hemorrhage); New Mexico, *e.g., Little v. Korber & Co.,* 71 N.M. 294, 378 P.2d 119 (1963) (heart attack); New York, *e.g., Klimas v. Trans Caribbean Airways, Inc.,* 10 N.Y.2d 209, 219 N.Y.S.2d 14, 176 N.E.2d 714 (1961), *rev'g,* 12 A.D.2d 551, 207 N.Y.S.2d 72 (1960) (fatal heart attack); Oregon, *e.g., Kinney v. State Indus. Acc. Commission,* 245 Ore. 543, 423 P.2d 186 (1967) (aggravation of aortic stenosis); Pennsylvania, *e.g., Allied Chemical Corp. v. Workmen's Comp. App. Bd.,* 15 Pa.Cmwlth. 195, 325 A.2d 482 (1974) (heart attack); Texas, *e.g., Aetna Ins. Co. v. Hart,* 315 S.W.2d 169 (Tex.Civ. App.1958) (stroke); Utah, *e.g., Moray v. Industrial Commission,* 58 Utah 404, 199 P. 1023 (1921) (loss of vision).

In *City and County of Denver v. Industrial Commission,* 195 Colo. 431, 579 P.2d 80 (1978), which involved a police sergeant who received a permanent partial disability award as a result of a heart attack suffered on December 3, 1974, we held that "evidence of job stress, *e.g.,* physical strain accompanied by emotional or mental tension," is sufficient to support an award for a heart attack. We, however, did not rule out the possibility that other types of job-related stress might be compensable. Rather, our decision in

there is evidence sufficient to support a determination by a preponderance of the evidence that job-related emotional or mental stress proximately caused an injury or occupational disease resulting in disability or death, a compensation award may be appropriately entered on behalf of the worker or his next of kin.

## IV.

■ We now consider whether the referee applied the appropriate legal standard in concluding that the stress experienced by the decedent did not qualify as "an injury or occupational disease arising out of and in the course of employment." This conclusion hinged on the referee's application of the following test to the stress-engendering activities of the decedent: "whether the decedent's actions were under express or implied direction of his employer, and whether the action[s] were actions from which the employer would benefit." Because, according to the referee, the decedent's actions were not performed pursuant to the duties of his employment and did not confer a benefit on the employer, the statutory "arising out of and in the course of" requirement of section 8–52–102(1)(c), 3 C.R.S. (1984 Supp.), was not satisfied. The referee, in our view, applied an unduly restrictive standard in resolving this aspect of the case.

■ It is not essential to compensability that the activities of an employee must emanate from some obligatory job-function or that they must result in some specific benefit to the employer. Many job-functions involve discretionary or optional activities on the part of the employee, devoid of any duty component and unrelated to any specific benefit to the employer, but nonetheless sufficiently incidental to the work itself as to be properly considered as arising out of and in the course of employment. *See, e.g., City and County of Denver*

*School District No. 1 v. Industrial Commission,* 196 Colo. 131, 581 P.2d 1162 (1978) (injuries sustained by school counselor while driving to restaurant for lunch arose out of and in the course of employment where school cafeteria was closed and counselor was required to return to the school later in the day for a teachers' meeting). To be sure, activities emanating from an employment duty or resulting in the conferment of a concrete benefit on the employer would constitute persuasive evidence that the "arising out of and in the course of" standard has been satisfied. It is quite another matter, however, to require as a condition of compensability that a particular activity satisfy either aspect of the duty-benefit formulation. We conclude that, in contrast to the standard employed by the referee, an activity arises out of and in the course of employment when it is sufficiently interrelated to the conditions and circumstances under which the employee usually performs his job functions that the activity may reasonably be characterized as an incident of employment, even though the activity itself is not a strict obligation of employment and does not confer a specific benefit on the employer. *See generally City and County of Denver School District No. 1,* 196 Colo. 131, 581 P.2d 1162; *Alexander Film Co. v. Industrial Commission,* 136 Colo. 486, 319 P.2d 1074 (1957); *O.P. Skaggs Co. v. Nixon,* 101 Colo. 203, 72 P.2d 1102 (1937).

Because the referee employed an unduly restrictive standard of compensability, it is necessary to remand this case for additional findings under the standard set forth above. If, after applying the appropriate standard, the referee determines that the decedent's stress did not arise out of and in the course of employment, the claim of the widow and children should be denied. If, on the other hand, the referee determines that the decedent's stress did arise out of and in the course of employment, the ref-

that case related solely to the type of job-related stress involved in the case. Section 8–41–108(2.-5), 3 C.R.S. (1984 Supp.), was added to the Act in 1975, subsequent to the injury involved in *City and County of Denver.* Under this section, the terms "accident," "injury," and "occupational disease" do not include "disability or death

caused by heart attack unless it is shown by competent evidence that such heart attack was proximately caused by an unusual exertion arising out of and within the course of the employment." As already noted, the referee in this case expressly found that the decedent did not suffer a heart attack.

eree must then make appropriate findings, pursuant to section 8–52–102(1)(c), 3 C.R.S. (1984 Supp.), on whether the job-related stress was the proximate cause of the decedent's death. *See, e.g., Public Service Co. v. Industrial Commission*, 189 Colo. 153, 538 P.2d 430 (1975); *Industrial Commission v. Royal Indemnity Co.*, 124 Colo. 210, 236 P.2d 293 (1951); *Colorado Fuel & Iron Corp. v. Industrial Commission*, 129 Colo. 353, 269 P.2d 1070 (1954). The referee, of course, may permit the parties to present additional evidence on these issues if the present evidentiary record is inadequate to allow an informed resolution of them.

We affirm the judgment of the court of appeals insofar as it holds that job-related mental or emotional stress may constitute the cause of an injury for which a compensation award may be entered, as long as the other prerequisites for recovery under the Act are satisfied. We, however, reverse that part of the judgment requiring that any reasonable doubt as to compensability be resolved in favor of a compensation claimant. The cause is accordingly remanded to the court of appeals with directions to return the case to the commission for additional findings by the referee in accordance with the views set forth herein.