■ In the Matter of the Claim of WILLIAM BUMPUS, Respondent, v. EASTERN GREYHOUND BUS CORPORATION et al., Appellants, and SPECIAL FUNDS CONSERVATION COMMITTEE, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— STALEY, JR., J. Appeal from a decision of the Workmen's Compensation Board, filed March 9, 1967. The claimant was employed as a mechanic for the Eastern Greyhound Bus Corporation. He testified that in the middle of January, 1963 he worked in a wet area and his shoes became wet and stiff. On the following day he began to feel an irritation and burning sensation of his left fourth toe as a result of the wet, tight and pinching shoes. This condition worsened and, on January 29, 1963, he sought medical treatment from his family physician, Dr. Goldstein. On March 4, 1963 he consulted Dr. Bradford who diagnosed the condition of the toe as an incipient gangrenous condition of the toe due to arteriosclerosis, and had the claimant admitted to the Caledonia Hospital where a sympathectomy was performed. The toe continued to show signs of incipient gangrene, and the condition got progressively worse. On September 11, 1963 he was admitted to the Veterans Administration Hospital in Brooklyn, New York, where, on October 10, 1963 his left fourth toe was amputated and, on November 6, 1963 his left leg was amputated below the knee. The claimant had a pre-existing vascular disease which started with trench foot in 1945 while he was an infantryman in Italy. The board found that " the claimant sustained an accidental injury arising out of and in the course of his employment in January, 1963 when he felt an irritation and burning in his left fourth toe caused by the wet, tight work shoes, which superimposed upon the pre-existing circulatory condition led to and was causally related to the amputation of the left leg." The appellants contend that there is no substantial evidence to support the board's finding of accidental injury and causal relation for the amputation of the left leg. In this regard the appellants contend that the claimant did not come forth with the story that the injury was caused by his shoes until after the amputation, and did not file a claim until 21 months after the alleged incident. This contention is based upon the fact that the first two physicians whom he saw had no history showing an irritation of the left fourth toe caused by wet feet, and the further fact that the claimant or a member of his family called the first physician after he left the Veterans Hospital to ask whether or not the condition could be related to the shoes he was wearing and the work he was doing. Appellants' claim that the claimant did not come forth with this story until after the amputation is contradicted by the clinical record of the Veterans Administration Hospital dated September 11, 1963, which contains the following: " He is a bus mechanic and feels that frequently wet shoes (at work) rubbed against his toe." The call to the family physician after leaving the hospital can only be related to seeking information as to probable cause. This also explains the reason for late filing. Dr. Fisher, a consultant in the field of peripheral vascular diseases, testified that he received a history that the claimant had trench foot in 1945; that he had no trouble with his feet until the second exposure in January, 1963; and that the trench foot caused permanent damage in the form of a neurovascular damage, and any further injury would aggravate the damage, particularly following exposure to cold and dampness, and that the stiffness of the claimant's shoes was an aggravating factor of a sufficient extent to aggravate any pre-existing vascular disease. The appellants' medical expert rendered a contradictory medical opinion as to causal relation stating that the " whole process * * * was probably hastened by his frostbite in World War II, but the shoe crusher (pressure) was not a contributing factor." These conflicting medical opinions based on the facts involved created an issue of fact within the province of the board to resolve. That issue has been resolved by the board in favor of the

claimant and the board's decision should not be disturbed. (*Matter of Carras-quillo* v. *Santini Bros.*, 13 N Y 2d 245; *Matter of Palermo* v. *Gallucci & Sons*, 5 N Y 2d 529.) The record contains substantial evidence to amply support the board's finding of accidental injury and causal relationship. (*Matter of Walters* v. *U. S. Vitamin Corp.*, 11 A D 2d 280, affd. 10 N Y 2d 924.) Decision affirmed, with costs to the Workmen's Compensation Board. Gibson, P. J., Herlihy, Reynolds, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Staley, Jr., J.