Fuchsberg, J.
The issue here is: Was there sufficient evidence presented to sustain the finding of fact made in this case by the Workmen’s Compensation Board that claimant’s decedent, Vernon Currie, an employee of the Town of Davenport, suffered his death because of natural causes rather than from an accidental injury within the meaning of the Workmen’s Compensation Law?
The Appellate Division reversed that finding, holding that substantial evidence to sustain it was "totally lacking” and ordered the claim returned to the board for action in accordance with the court’s decision (40 AD2d 744). That order, not being a final disposition of the case, was not then appealable. (CPLR 5601, subds [a], [d].) The board, in compliance with the direction of the court, and without further introduction of evidence, thereafter made an award against the employer and, as provided by subdivision 8 of section 15 of the Workmen’s Compensation Law, held the Special Disability Fund liable for payments after 104 weeks of disability. This appeal to us is now taken directly from that decision pursuant to CPLR 5601 (subd [d]). As permitted by that section, appellants now bring up for review the order of the Appellate Division reversing the board’s original decision. (Matter of Board of Educ. of City of N. Y. v Nyquist, 31 NY2d 468, 472.) For the reasons which follow, we have concluded that the order should be reversed and the initial decision of the board reinstated.
Analysis reveals the dispute here was less over the facts than about the inferences to be drawn from them. At about noon of September 1, 1970, Currie, then 65, was last seen carrying a five-gallon can of water toward a landfill site at which he had been working. An hour later, he was found dead. It occurred at a time when he would be in the course of his employment.
The decedent had a long prior history of medical problems, including arteriosclertoric heart patholgy and diabetes. Coronary artery disease required that he be on pentacythritol tetramitrate and nitroglycerin. In recent years, he had been twice hospitalized for that condition. On one of those occasions, he suffered a pulmonary embolism as well. Following a heart attack in 1967, his work was limited to only one full day and two half days a week at light work.
The hearing before the Workmen’s Compensation referee concentrated on causation and revolved around medical proof. A Dr. VandenBerg, decedent’s personal physician, testified to *475 Currie’s medical history, both from his personal knowledge and from his medical chart. In answer to a hypothetical question, he expressed the opinion that carrying the can of water contributed to Currie’s death. On cross-examination, however, he agreed that, in view of Currie’s underlying condition, a myocardial infarction was a very common development which could occur and bring about death in and by itself. Dr. VandenBerg had not examined the decedant for 11 weeks before the death occurred. Nor did he examine the body thereafter.
Dr. VandenBerg’s summary of Currie’s past condition, and of his job profile, had been reviewed for the town by a Dr. J. T. Walters, a cardiac specialist. Dr. Walter’s report, received in evidence, attributed the death to "arteriosclerotic heart disease which had been present for several years and was progressive”. He specifically ruled out industrial accident as a cause. Claimant’s attorney declined the opportunity, offered by the referee, to have Dr. Walters produced for cross-examination.
Dr. Harry J. Wilbur, the Delaware County Medical Examiner, in his official report, which was also considered by the referee, expressed the opinion that the cause of death was cardiac arrest resulting from arteriosclerotic heart disease and uncontrolled diabetes. He did not mention trauma or work as a possible cause, even a contributory one.
Clearly then, the most crucial parts of what the three medical witnesses had to say, orally or in writing, were not expressions of medical fact but of medical opinion. Even the main contribution to the hearing coming from Dr. VandenBerg, the only one of the three to actually testify, consisted of a recital of his views as an expert rather than his observations as an attending physician. He knew no more about the events at the time of the death, and that by hearsay, than did anyone else. He had no firsthand knowledge of the progress of decedent’s condition between June 17, the date of his last examination, and September 1, when Currie passed away. There was no suggestion that any occasion, whether of surgery or otherwise, had ever afforded bim the opportunity to directly visualize the condition of the decedent’s circulatory system as a basis for postmortem comparison. If he had, it would have been of limited meaning since he never made a postmortem examination, either by way of autopsy or even externally.
True it is that, unlike Dr. Walters and Dr. Wilbur, Dr. *476 VandenBerg was in a position to know Currie’s earlier condition firsthand. But, in the end, he was left with but an opinion, bolstered only by the same limited information available to the others. For Dr. Walters, for example, had before him the very same past medical data gathered and used by Dr. VandenBerg and on which the latter had relied. Under these circumstances, we do not think it can be said that the referee did not have the right to accept the opinions of Dr. Walters, and of Dr. Wilbur, over that of Dr. VandenBerg. To the contrary, because Dr. Walters was the only one of the three who was a heart specialist and because Dr. Wilbur, as a medical examiner, dealt regularly in problems of morbid anatomy, they might, each in differing degrees, be found to have had greater sensitivity to the significance of Dr. VandenBerg’s own past clinical findings than the latter himself had, not to mention the superior qualifications Dr. Walters enjoyed in the specialty involved.
This is especially so since the decisive inferences. to be drawn by the referee were so heavily dependent on the competing opinions put before him. It is axiomatic that a trier of facts may accept or reject the opinion of an expert just as he may that of a layman and, for the most part, on similar principles. (7 Wigmore, Evidence [3d ed], § 1920, p 18; Richardson, Evidence [10th ed], § 367, p 340.)
In compensation cases, referees deal with medical questions, medical reports and medical witnesses all the time. In New York, they are required to be lawyers. Their repeated exposure to cases in their specialized area of decision-making is likely to have developed in them a considerable degree of expertise and a sharpened awareness of such matters. Expectedly, that growing expertise would be employed in weighing and balancing evidence with appropriate regard for its probative character (Benjamin, Administrative Adjudication in New York State, p 175). Therefore, opinion evidence should certainly be less binding on them than on lay fact finders.
Indeed, the board itself is not bound to accept the testimony of any one expert or group of experts. It is free to choose those it credits and reject those it does not (Shedd v Parlor City Constr. Co. 37 AD2d 890; Sinozko v Morse Chain Co., 34 AD2d 1054), particularly in a case like the one before us, where the opinions were based not so much on facts as on inferences of fact. To paraphrase the language of Matter of Carpenter v *477 Sibley, Lindsay & Curr Co. (302 NY 304, 306), it was within the power of the referee and of the board, on its review, to decide even whether the testimony of a physician — ”'notwithstanding some shortage of agreement within itself — established or did not establish causal relationship.
There has been considerable controversy over whether workmen’s compensation should be awardable for heart attacks resulting from the ordinary exertion of one’s usual work or whether some unusual, extraordinary strain should be required (29 NACCA LJ 227). Matter of Schechter v State Ins. Fund (6 NY2d 506, 510) was decided by us on the "excessive strain” theory and our later cases have spoken of "strenuous effort” (Matter of Schuren v Wolfson, 30 NY2d 90, 92; Matter of McCormick v Green Bus Lines, 29 NY2d 246). Professor Larson has observed that such tests were designed to insure that disability or death from heart disease was work-connected. (1A Larson, Workmen’s Compensation Law, § 38.30.) Here the board’s finding did not support recovery on any of these theories, whether "excessive strain”, "strenuous effort” or ordinary "exertion”.
The referee reported that "every witness agreed [the work] was not strenuous” and, understandably, found that nothing more was involved than the "ordinary wear and tear of life and that claimant’s death was the end result of the prior arteriosclerotic and diabetic conditions plaguing him”; in turn, the board, after review, found "the death was due to the decedent’s pre-existing cardiac pathology and was not causally related to his employment”. (Emphasis added.) Accordingly, unless we hold the law is that any heart attack, or resultant death incurred therefrom, while on a job is compensable, which it is not, the board’s finding interdicted an award to this claimant.
Accordingly, the order is reversed and the initial decision of the Workmen’s Compensation Board reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Cooke taking no part.
Decision reversed, without costs, and the initial decision of the Workmen’s Compensation Board denying the claim reinstated.