In the Matter of the Claim of MARIE M. LAGONA, Respondent, v STARPOINT CENTRAL SCHOOL, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 30, 1975

*Hurwitz, Siegel & Hurwitz (Sheldon Hurwitz* of counsel), for appellant.

*Tiernan & Krug* for Marie M. Lagona, respondent.

*Louis J. Lefkowitz, Attorney-General (Morris N. Lissauer* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

LARKIN, J. This is an appeal from a decision of the Workmen's Compensation Board, filed May 30, 1974, which held that the employee's death was a result of a myocardial infarction, was brought about by undue stress and strain beyond the ordinary wear and tear of life and, thus, constituted an accident arising out of and in the course of his employment.

Decedent had a history of heart disease and prior myocardial infarctions which required hospitalization in 1963, 1968 and 1969 and, when last seen by his physician in August, 1971, his condition was described as satisfactory. He was employed as an assistant elementary principal by a central school district and had been so employed for six years. September 7, 1971, the day before the pupils were to return to school, was teacher orientation day. Decedent's secretary testified that he had a busy and tiring day but that he "seemed to be relaxed and did not complain of feeling ill". Decedent left the school at approximately 4:30 P.M. in his automobile and some two hours later, at about 6:30 P.M., he was found dead in a public washroom in a park some nine miles from the school. The park was on a direct route between the school and the decedent's home. There was no autopsy, but the cause of death was listed by decedent's attending physician as myocardial infarction and arteriosclerotic heart disease.

A heart injury such as in the instant case, when brought on by overexertion or strain in the course of daily work, is compensable even though a pre-existing pathology may have been a contributing factor *(Matter of Masse v Robinson Co.,* 301 NY 34). Excessive strain in work may be found to have existed although the work performed "which precipitates the heart attack is of the same general type as that in which he is regularly involved" *(Matter of Schechter v State Ins. Fund,* 6

NY2d 506, 510). Even in the case of a man with an insufficient cardiac reserve, if the actual work done is found by substantial evidence to have precipitated a cardiac event which caused death, a sufficient factual relationship may be found between the strain of the work and the result to be deemed an accident within the scope of the Workmen's Compensation Law *(Matter of McCormick v Green Bus Lines,* 29 NY2d 246).

Although the decedent's activities, as evidenced by this record, may just as well have been found to have been routine and not precipitous of excessive strain, the board found that the decedent's work activities on the day in question involved undue stress and strain, beyond the ordinary wear and tear of life, which aggravated claimant's pre-existing coronary condition and caused his death. There is substantial evidence in this record to support the finding by the board which should not be disturbed *(Matter of Currie v Town of Davenport,* 37 NY2d 472). The resolution of conflicting medical opinion as to the casual relationship also falls within the fact-finding power of the board and, when supported by substantial evidence in the record, the board's determination must be sustained *(Matter of Prue v Empire Scrap Metals,* 32 AD2d 680; *Matter of Trgo v Harris Structural Steel Corp.,* 13 AD2d 856).

The decision should be affirmed, with costs to the Workmen's Compensation Board.

HERLIHY, P. J. (dissenting). The primary issue before this court is whether or not the decision is supported by substantial evidence and that in turn raises the questions of substantial evidence supporting a finding of wear and tear flowing from the employment which is beyond the simple act of living as a functional human *(Matter of McCormick v Green Bus Lines,* 29 NY2d 246) and substantial evidence supporting the finding that the employment precipitated the fatal myocardial infarction *(Matter of Currie v Town of Davenport,* 37 NY2d 472).

The record contains many generalizations of the decedent's last day of employment (and life) as "hectic", "busy", and "tiring", but it also contains in uncontradicted detail the precise nature of the day and of the duties so characterized. What he did on the day in question may be summarized as attending various meetings in the school complex; giving an apparently uncomplicated discourse at one meeting; walking farther or more than his usual work requirement; and signing "many, many, many pink slips". Of course, there would be the

general emotional impact caused by the fact that it was the day before the children would attend school and it was the first day for the teachers to attend as a group.

In our opinion, the record as a whole does not contain substantial evidence to support the finding of the board that the work activities of September 7, 1971 exceeded the ordinary wear and tear of life. The sole possible arduous physical activity was walking and that is difficult to characterize as excessive in terms of human existence. The signing of pink slips does not raise any inference of arduous activity. The record describes the decedent as "tired", but on the other hand as being in good spirits and in no way excited or depressed by the events of the day. Significantly, the record contains no evidence that he was complaining to any extent of illness during the school day or as he left the premises. There simply is nothing in the detailed explanation of the day found in this record that could be a recognizable link with stress and strain of employment beyond ordinary wear and tear to which everyone is subjected.

Assuming for present purposes that ordinary exertion is sufficient to support a finding of accident (cf. *Matter of Currie v Town of Davenport, supra,* p 477) and that all that is required is *some* connection with the employment, it is apparent that the test of stress and strain beyond the ordinary wear and tear of life as a line of demarcation for heart accident arising out of and in the course of employment is outside of the normal tests of substantial evidence and dependent *solely* upon the discretion of the board, thereby not being reasonably reviewable by a court.

In this particular case the finding of a causal connection between the work activity and the fatal infarction is also attacked by appellants as not being supported by substantial evidence.

The attending physician of the decedent submitted a letter dated December 20, 1971 wherein he relied upon a prior written statement of the decedent's personal secretary as showing "extraordinary emotional strain of the first day back with the many demands from his various classes, teacher orientation lectures and student schedules. In addition to this there is also a marked extra physical activity * * * by the extra trips to various classrooms and cafeteria." The doctor went on to note that decedent "was known to have significant coronary artery disease" and was to perform his usual activi-

ties "as long as they did not result in any unusual fatigue, shortness of breath or chest pain." He concluded in the letter that the "unusual physical and mental stresses and strains" caused the infarction. At this point it should be noted that although the decedent was observed throughout almost all of his school day by independent witnesses, he exhibited no signs of "unusual fatigue, shortness of breath or chest pain".

When he testified, the attending physician was asked a hypothetical question that included the facts that decedent was in "charge of classroom assignments, class registries, schedules and all of the details that could be worked out in the elementary school". These facts are not established in this record as duties to which the decedent had given any attention on September 7, 1971. The hypothetical question went on in great detail as to the work for which decedent was responsible prior to September 7, 1971 and those facts are entirely unrelated to the finding of the board as to the activity of September 7, 1971.

The doctor expressed that in his opinion the death was related to the activity of September 7, 1971 as presented in his opinion and based on the written statement of the secretary.

The doctor testified that the decedent was more prone to a heart attack than a normal person because of his underlying coronary artery disease. He affirmed that he found causal relationship between the work and death because there was "extraordinary physical and emotional stress and strain immediately preceding his death." The hypothetical question is defective as incorporating facts having nothing to do with the work activity of September 7, 1971. The doctor after having given his clear opinion that the events of September 7 caused the infarction, stated he was relying upon all of the assumed facts in the hypothetical. His opinion, in any event, was premised upon "emotional" stress and strain and the record is *completely* devoid of any evidence of emotional strain. His personal secretary noted in her written statement that decedent was in "good spirits" when he left at the end of the day and she testified that he was in "good spirits". His supervising principal also testified that decedent was "in very good spirits" at about 3:00 P.M. and even his wife does not mention any emotional upset in her testimony.

The record is devoid of any "extraordinary" physical stress on the day in question and it is totally devoid of any emotional stress. The medical evidence in favor of claimant at its

very best only establishes death from the ordinary wear and tear of life. There is no support in the record for the board's finding "that decedent's work activities * * * involved undue stress and strain beyond the ordinary wear and tear of life". The record establishes that unfortunately for the decedent his disease had reached a point where death was a real aspect of his life each day and the work activity of September 7, 1971 had no demonstrable connection with the death from a medical standpoint. The medical evidence is insufficient to establish any causal connection with the employment other than by the speculation of the attending physician.

The decision should be reversed and the claim dismissed.

SWEENEY and KANE, JJ., concur with LARKIN, J. HERLIHY, P. J. and REYNOLDS, J., dissent and vote to reverse in an opinion by HERLIHY, P. J.

Decision affirmed, with costs to the Workmen's Compensation Board.