York, Appellant-Respondent. (Claim No. 58639.)—Cross appeals from a judgment in favor of claimant Delilah Plumadore, entered February 9, 1978, upon a decision of the Court of Claims. Claimant Delilah Plumadore has been awarded the sum of $40,000 for the false imprisonment, negligence and malpractice of the State of New York arising out of her commitment to St. Lawrence State Hospital. The derivative claim of her husband has been dismissed. In our view, the judgment should be affirmed. On May 13, 1974, Mrs. Plumadore was admitted to the Saranac Lake General Hospital under the care of Dr. James Stover for treatment of a gallbladder condition. Her medical history revealed incidents of epigastric distress, as well as emotional problems founded in marital difficulties which, in 1967 and 1968, had precipitated suicide attempts. Following a series of tests and consultations, including one with Dr. John Murphy, a psychiatrist who had examined her, she was advised by an attending surgeon, Dr. Gould, that she would undergo surgery to remove her gallbladder. However, later that same day, Dr. Stover appeared in her room and directed her to dress and pack since he had arranged to have her admitted to the St. Lawrence State Hospital at Ogdensburg. Thereafter, two uniformed State Troopers handcuffed her, strapped her in the back seat of a troop car and, accompanied by a female hospital employee, transported her to the State hospital. Upon arrival, the admitting officer, Dr. Warren Harris, immediately recognized that Dr. Stover lacked the requisite authority to order her involuntary commitment. He requested Mrs. Plumadore to sign a voluntary admission form. She not only refused, but protested her presence there. Nevertheless, her complaints were ignored, and Dr. Harris assigned her to a ward without a proper physical or psychiatric examination and without contacting her family or Dr. Stover. The record of her admission reflects that her status was "informal", i.e., voluntary, but it plainly was not. She remained in the hospital from Friday afternoon until late in the afternoon of Monday, May 20, 1974, when she was released in the company of a friend for medical attention at a hospital in Burlington, Vermont. The demeaning experiences she endured while confined in a ward for mental patients and the indignities inflicted upon her need not be repeated here. It is enough to say that for one acutely medically ill the episode certainly justified an award in money damages for false imprisonment, together with a further sum for the residual effects thereof attributable solely to the negligence of the State's agents. The illegality of her confinement was accurately detected on her arrival at the St. Lawrence State Hospital since the designation of the examining physician was by one without authority to make the designation. The process was void and the State should be held liable for her ensuing detention (*Warner v State of New York*, 297 NY 395; *Wood v State of New York*, 28 AD2d 643). *Nuernberger v State of New York* (41 NY2d 111) and *Middleton v State of New York* (54 AD2d 450, affd 43 NY2d 678) might provide a basis for relieving the State from Liability for the actions of the State Troopers, but these authorities are clearly distinguishable from the case at bar and cannot serve to excuse the subsequent acts of the personnel at the State hospital. Moreover, in this case we are not dealing with the question of a mistaken diagnosis which might relieve the State from responsibility for errors of medical judgment (cf. *Lauer v State of New York*, 57 AD2d 673; *Dennison v State of New York*, 28 AD2d 608, affd 23 NY2d 996), for the record demonstrates that no proper examinations were conducted *at any time* to validate the commitment procedure (*Warner v State of New York, supra; Wood v State of New York, supra*). Lastly, while we agree claimant Arthur Plumadore did not sustain his burden of proof, we find the other arguments

■ In the Matter of the Claim of WILLIAM COOK, Respondent, v WATER TUNNEL CONTRACTORS et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workers' Compensation Board, filed June 22, 1978, as amended by a decision filed August 9, 1979. On November 22, 1974, claimant, an electrician engaged in tunnel construction necessitating the lifting of large, extremely heavy wire cables, suffered chest pains and numbness in his extremities. He finished the day's work explaining to a coemployee that he was suffering from indigestion. The following day, Saturday, while working at home he again experienced tightness in his chest. That evening he returned home early from a dance because he felt ill. The next day, November 24, 1974, he had episodes of vomiting and was hospitalized. His condition was diagnosed as an acute myocardial infarction. After claimant filed for benefits on September 16, 1976, and a subsequent hearing, the Administrative Law Judge concluded that claimant's heart attack was not precipitated by his work activity. The board reversed, finding that the work performed on November 22, 1974 was excessively arduous and strenuous and precipitated the myocardial infarction. The board, on its own motion, also concluded that claimant's failure to file the statutory notice (Workers' Compensation Law, § 18) was excused. The employer and carrier appeal. We concur in the board's conclusion that claimant sustained an accidental injury arising out of and in the course of his employment with a resulting causally related disability. The only difference between the testimony of claimant's physician that the strenuous work activity of November 22, 1974 was the sole cause of the infarction and that of Dr. Matis, testifying on behalf of the employer and carrier, is that Dr. Matis was of the view that since claimant's medical records indicated that he had an underlying coronary arteriosclerotic condition, such condition, rather than the work activity, might have caused the infarction. Yet, Dr. Matis conceded that "according to the serum enzymes [the infarction] had to be of one possibly two days' duration, but certainly not more than two days in duration for the enzymes to have been elevated as they were". This view appears to be consistent with the occurrence of the infarction on November 22 and claimant's hospitalization on November 24, 1974 when the enzyme readings were recorded. At most, the testimony of the two doctors created a question of medical fact (Matter of McCormick v Green Bus Lines, 29 NY2d 246), and the resolution of conflicts in medical opinion is for the board (Matter of Currie v Town` of Davenport, 37 NY2d 472). Such a resolution, when supported by substantial evidence, as here, compels our affirmance. We are also of the view that the board properly excused claimant's failure to give the statutory notice. We have consistently held that where, as here, an accident is witnessed, and employment and hospital records are available, the statutory purpose (Workers' Compensation Law, § 18) is fulfilled since the absence of impediment to defense preparation precludes prejudice (Matter of Sturmer v Harbor Beer Distr. Corp., 59 AD2d 978). Here, Dr. Matis reviewed claimant's entire medical history and no complaint was made at the hearing that medical records, or, indeed, any kind of relevant material was not present for review. Further, claimant's coemployee on November 22, 1974, along with his immediate supervisor, both testified at the hearing. Thus, a question of fact with respect to the issue of prejudice was presented to the board, and we cannot say its conclusion was not

supported by substantial evidence *(Matter of Coyle v Morningside House of St. Luke's Home,* 59 AD2d 819). Decision affirmed, with costs to the Workers' Compensation Board against the employer and its insurance carrier. Mahoney, P. J., Greenblott, Sweeney, Kane and Casey, JJ., concur.