■ In the Matter of the Claim of RALPH J. COSKEY, Appellant, v CORNELL UNIVERSITY, Respondent. WORKERS' COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workers' Compensation Board, filed October 18, 1978, which disallowed a claim for compensation pursuant to the Workers' Compensation Law. On October 21, 1967, claimant, a security officer employed by the employer Cornell University, was allegedly struck by a full 16-ounce beer can while assisting in crowd control involving a student demonstration. On July 2, 1974, he underwent open heart surgery to remove an aneurysm of the apex of his heart. He thereafter filed a claim for compensation, contending that his heart condition was causally related to the incident in 1967. In a decision filed May 19, 1977, the board found: "although there is testimony as to causally related injury, it is incredible that claimant's alleged injury to chest and heart, was not disclosed until more than 2 years subsequent to the original injury, which was reported in Cornell University Hospital records 10/21/67 as to claimant being 'hit with can of beer on right shoulder', that this history was further testified to by Ms. Kirby, nurse, to this effect to seeing a small bruise on claimant's right shoulder on 10/21/67 shown to her by the claimant." The above decision was thereafter rescinded by the board, and following restoral of the case to the panel for further consideration, a majority of the panel found, by decision filed October 18, 1978: "after consideration of the medical testimony, and the interval of time between the date of the alleged accident and the onset of symptons, that the claimant's disability is not causally related to being struck by a beer can." Claimant testified that he was hit by a full beer can in his "chest area" and "dropped right to the ground". He was immediately taken to an infirmary on campus where he was examined by Ms. Kirby, a nurse, who observed a "very small bruise on his shoulder". She testified that she was not informed by claimant that he had been struck in the chest by a beer can, but that claimant did show her the bruise on his shoulder. Ms. Kirby filed an outpatient form in which she stated that claimant was hit by a beer can on the right shoulder and that she found a small bruise. Although the report of Ms. Kirby appeared to be a factor in

the board's decision filed May 17, 1977, it does not appear to be so in the decision filed October 18, 1978. Rather, the board expressly based its decision upon the medical testimony and the interval of time between the accident and the onset of symptoms. Turning to the medical testimony, in 1973 claimant was referred to Dr. Munchmeyer because of an abnormal cardiogram. In January of 1974, claimant began experiencing weakness, shortness of breath, lack of strength and pains in his chest. He continued to receive medical attention and on July 2, 1974, he was operated on for removal of the aneurysm. Dr. Munchmeyer testified that on February 8, 1973 he examined claimant at the request of another doctor to evaluate abnormalities on an EKG which had been taken in late 1972. The EKG taken by Dr. Munchmeyer was similar to the reading obtained in 1972, and, therefore, he referred claimant to Dr. Gensini to determine whether claimant had coronary artery disease and an angioma. By letter dated March 30, 1973, Dr. Gensini reported that the coronary arteries were normal with no evidence of arteriosclerotic heart disease. However, Dr. Gensini found that claimant's blood flow to the apex was abnormal and that he was "puzzled" by the vascular pattern demonstrated by claimant. Approximately one month later, Dr. Munchmeyer learned from Dr. Gensini that claimant had sustained a blow to his chest region in 1968, which Dr. Gensini thought might "definitely" be a causative factor. On May 30, 1974, Dr. Munchmeyer again saw claimant, and took note of his shortness of breath, weakness and progressive fatigue. An EKG disclosed the same abnormality as existed the previous year, and claimant was again referred to Dr. Gensini. As a result of Dr. Gensini's examination, the aneurysm of the apex of the heart was removed. As to the cause of the aneurysm, Dr. Munchmeyer testified that in his opinion: "In essence this was an aneurysm of the heart with normal coronary arteries. That's a very strange finding. Usually if you have an aneurysm of the heart, it is because you blocked off one of the coronary arteries or a branch of the coronary artery and infarcted it or killed the heart. That is a heart attack and the area that died becomes weakened and stretched and becomes an aneurysm. That is the most common cause of ventricular aneurysm. There is no evidence of that because the coronary arteries were normal, so there are two possibilities. One would be a congenital basis for this and the other would be trauma to the chest and trauma to the chest or contusion to the chest area can cause a condition of heart muscle and it can get badly injured enough that portions of it can die. Just as they would if they lost their circulation in a coronary occlusion. So my opinion was from his history that he had been struck in the chest by a heavy object a beer can that this was the most likely cause of the aneurysm." He testified that the possibility that the aneurysm was due to a congenital defect was "very small". As to the time when the symptoms would begin to appear, Dr. Munchmeyer further testified: "The initial damage would probably occur within the first couple of days. A cardiogram taken at the time would have seen abnormalities if this is the cause. Then scarring would take place just in the same manner as in a standard heart attack and the area would slowly scar in. You might feel symptoms. You might never feel symptoms and still get the EKG changes. You might get symptoms in a year or five years. It's simply a matter of when does this begin to interfere with the pump." At a hearing held on June 23, 1975, Dr. Gensini testified that he examined claimant in March of 1973 and found no evidence of any arteriosclerotic involvement of his coronary arteries, which he considered "highly unusual" and "significant" because that is the common cause of an aneurysm. He found that the apex, or tip of the heart, was

not receiving blood supply and that was "definitely abnormal". Since there was no evidence that the aneurysm was caused by hardening of the arteries, he questioned claimant and learned that he had been struck in the chest by a can full of beer. He decided that surgery should not be pursued at that time, but that claimant should be closely followed. Dr. Gensini testified that in March of 1973, it was his opinion that the cause of the aneurysm "was due to trauma and that the specific episode of the throwing of the beer can which hit the chest was the direct responsible fact for it. Dr. Gensini's subsequent examinations of claimant "fortified" his opinion that the cause of the aneurysm was "the trauma received by the [claimant]". He also testified that in his consultations and discussions with other doctors, there were no dissenting opinions as to the cause of the aneurysm. Moreover, the report of the operating surgeon confirmed his opinion. Dr. Gensini further testified that the fact that claimant's heart condition was not manifested until after a long period of time was not unusual and supported his opinion as to causal relationship. A third physician, Dr. Huntington, also testified that the aneurysm was "most likely due to the trauma described by [claimant]"; that in his "best judgment", it was probably due to the beer can striking his chest. It is well settled that the board is free to resolve conflicting medical evidence and that it may accept those experts it credits and reject those it does not (Matter of Currie v Town of Davenport, 37 NY2d 472; Matter of Burch v Rollway Bearing Co., 62 AD2d 1126; Matter of Walsh v New York Tel. Co., 55 AD2d 765). The board is not bound to accept testimony of expert medical witnesses (Matter of Rosen v Rose Housewares, 34 AD2d 719), and its determination may not be disturbed where it is supported by substantial evidence (Matter of Bumpus v Eastern Greyhound Bus Corp., 30 AD2d 733). Here, however, there was no conflicting medical testimony; to the contrary, all three physicians testified that claimant's heart condition was causally related to the trauma he suffered when struck by the beer can in his chest. The fact that their medical opinions were not expressed with positiveness or absolute certainty is not fatal to an award (Matter of Mitchell v Nason's Delivery, 75 AD2d 965). Thus, there were no conflicting medical opinions so as to create an issue of fact within the province of the board to resolve. Although the board stated that it found no causal relation based upon a consideration of the medical testimony, it did not explain why or how such testimony supported its conclusion. Moreover, the fact that there was an interval of time between the date of the alleged accident and the onset of symptoms could not be relied on by the board as a basis to deny causal relation. There is no medical testimony to support such a conclusion; to the contrary, Dr. Gensini specifically testified that the time interval supported his opinion of causal relation. Accordingly, the record does not contain substantial medical evidence to support the board's decision. We would note, however, that in its decision, the board referred to the "alleged accident", thereby implying that claimant had not been in fact struck in the chest by a beer can. However, the board never made a specific finding as to whether claimant was in fact struck in the chest area, and this court must resort to speculation as to the basis of the board's decision. Therefore, the decision appealed from must be reversed and the matter remitted for further consideration by the board of the crucial issue of whether claimant had in fact been struck in the chest by a beer can. Decision reversed, with costs to claimant against the employer, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent herewith. Greenblott, J. P., Sweeney, Main, Mikoll and Herlihy, JJ., concur.