Chief Judge Conway.
Two issues are presented here: (1) do the facts and circumstances warrant the finding made by the Workmen’s Compensation Board that the claimant sustained an accidental injury within the meaning of the Workmen’s Compensation Law when he suffered a heart attack, and (2) assuming such, is there sufficient medical evidence presented to sustain the finding of fact made by the board that the heart attack was causally related to his activities as a trial counsel? We have concluded that both questions must be answered in the affirmative and, therefore, that the order of the Appellate Division must be reversed and the decision and award of the Workmen’s Compensation Board be reinstated.
The claimant, Harry Schechter, is employed by the State Insurance Fund as a Senior Trial Attorney, in charge of all litigation. Normally he spent approximately 60 to 70% of his time in court as a trial counsellor. However, during the months of January and February, 1955 — a period of seven weeks—his workload increased to such an extent that he was compelled to spend 100% of his time in court. During that entire period he was in the office on but one day and then only for a few hours. It was during this period that claimant experienced pains in his chest which finally culminated in a heart attack on March 1,1955.
Schechter’s chest pains began on January 3,1955, immediately upon his leaving the house that morning and persisted on and off until the time of his incapacitation on March 1,1955. In the course of traveling to and from work claimant used the subways exclusively and was thereby required to descend and ascend stairs. In addition, he carried a brief case which varied in weight from 25 to 35 pounds and which caused him to experience pain across his chest every time he lifted and carried it.
On February 14, 1955 Schechter commenced the trial of the so-called Agosti case. On February 23d the trial ended with claimant making his summation to the jury, a summation which lasted approximately three fourths of an hour. During the *509 course of Ms summation, Schechter began to perspire profusely and at the same time he experienced dizziness and severe pains across the top of his chest. At the completion of the summation, claimant was completely drenched in perspiration and was barely able to make his way back to Ms seat at the counsel table. Schechter waited until the jury returned with their verdict until approximately 10:00 p.m. that night. He then proceeded home with his heavy brief case in hand by subway and upon reaching his destination went immediately to bed and slept until the following morning. Throughout tMs entire period of time, including the journey home, claimant experienced extreme distress and pain. In the morning—Thursday, February 24, 1955 — Schechter left his home at approximately 11 or 12 o’clock, proceeded to the office and remained there but a few hours. He left the office after such a brief time because of the persistence of the pain. On February 25th claimant went to Supreme Court, Kings County, again carrying his heavy brief case weighing between 25 and 35 pounds. From there he went to his office but again did not remain long because of the pain he was experiencing. That evening he made an appointment for Sunday morning to see a doctor—he did not make an appointment for Friday night or Saturday because his doctor was an orthodox Jew who did not practice on those days. The pains persisted off and on Friday night and all day Saturday. His physician examined him and took an electrocardiogram on Sunday morning. The electrocardiogram proved normal. The doctor told him, however, to take a few weeks off and to go home and go to bed. Claimant remained home the remainder of Sunday and all day Monday. Then on Tuesday night, March 1, while sitting on his bed and bending over to untie Ms shoe, Schechter experienced terrifically sharp pains across Ms chest and a complete loss of breath. The doctor was called imiiiediately, oxygen was ordered and claimant was removed to the hospital under oxygen. He remained in the hospital for 43 or 44 days. On March 3d another electrocardiogram was taken and from that it was determined that Schechter had suffered a myocardial infarction.
The Workmen’s Compensation Board found that the claim came within the provisions of the Workmen’s Compensation Law and granted an award to Schechter. The board found as a *510 fact that Schechter’s disability was the result of accidental. Injuries and arose out of and in the course of his employment. In addition the board held that the claimant’s activities beginning with January, 1955, when viewed in the light of the medical evidence, ‘1 constitute an accidental injury within the meaning of the law and that such injury was an aggravating and contributing factor in the coronary occlusion and myocardial infarction ” suffered by him on March 1, 1955.
The Appellate Division, however, unanimously reversed the decision of the board and dismissed the claim upon the ground that there was no accident within the legal definition of that word.
What constitutes an industrial accident is to be determined ‘ ‘ by the common-sense viewpoint of the average man. ’ ’ (Matter of Masse v. Robinson Co., 301 N.Y. 34, 37.) There is no longer any doubt that a coronary occlusion or thrombosis is compensable as an industrial accident provided it is the resultant of excessive strain in the performance of one’s work- and this is true even though there be a pre-existing pathology which also contributes to the injury (Matter of Brooks v. Elliott Bates, Inc., 295 N. Y. 710; Matter of Masse v. Robinson Co., supra, p. 37; Matter of Cooper v. Brunswick Cigar Co., 298 N.Y. 731). Moreover, the claimant may be subjected to unusual or. excessive strain in the course of his employment despite the fact-that the work performed by him which precipitates the heart attack is of the same general type as that in which he is regularly involved (Matter of Kehoe v. London Guar. & Acc. Ins. Co., 303 N.Y. 973; Matter of Borra v. Siwanoy Country Club, 280 App. Div. 906, motion for leave to appeal denied 304 N. Y: 985; Matter of Sleator v. National City Bank, 309 N.Y. 708). The phrase ‘ ‘ unusual or excessive strain ’ ’, as sometimes used in describing these cases, is not so limited in its- meaning' as to include only work of an entirely different character from that customarily done. Simply stated, so long as the conditions of performing the work are such that an exceptional strain is imposed- on the worker so great that his heart is affected and damaged thereby, the requirement of unusual or excessive strain is satisfied.
Here, we have the uncontradicted testimony of. the claimant that beginning in January, 1955 and for seven weeks thereafter his workload as trial counsel was increased by between 30 to 40% of what it normally was. In other words, his normal *511 duties required him to he in court approximately 60 to 70% of the time, but during this period he was required to be in court 100% of the time. This increased court work, with its attendant additional emotional and physical stresses, certainly constitutes unusual strain and exertion in the course of Ms duties within the meaning of the cases cited above or so the board might reasonably find (see Matter of Kopec v. Buffalo Brake Beam-Acme Steel & Malleable Iron Works, 304 N. Y. 65, 71). However, in determining whether or not that added stress and strain constitutes- an industrial accident witMn the meaning of the Workmen’s Compensation Law, it is necessary to establish that the stress of'the unusual exertion is causally related to- the coronary occlusion and myocardial infarction suffered by Schechter. To establish such relation the evidence presented by the medical experts must be resorted to and examined. In Matter of Owens v. McGovern (309 N. Y. 449) at pages 452 and 453, this principle has been set forth as follows: “ The question in those cases [workmen’s compensation heart cases] is usually as to whether the exertion and strain of the work caused the heart attack so as to permit a finding of industrial accident. It is obviously impossible, given the other facts, to make such a causality finding, or to refuse it, without medical opinion proof. As Larson says in his 1 Workmen’s Compensation Law ’ the basic problem is medical causality (Vol. 1, § 38.83). The nexus between the work strain and the heart failure cannot be assumed, any more than the trier of the facts can assume that there was no connection. Consequently, in every workmen’s compensation heart case we have ever seen there was opinion testimony of causation. Whether or not that opinion was directly controverted, it was for the trier of the facts to "say whether or not he adopted the conclusion of the expert who testified for'claimant.” (Emphasis added.)
■ Two doctors were called as expert medical witnesses at the hearing of the case.' The medical expert testifying on the claimant’s behalf stated in the main that while he could not shy defimtely that Schechter’s coronary attack was precipitated by Ms strenuous labors preceding it, he did not see how one could conceivably - rule it out as such cause.. On the other hand, the expert, testifying on behalf óf theJcáfrier, was somewhat more forceful in stating'that in Ms opimon the myocardial *512 infarction sustained by claimant was due to an underlying pre-existing disease, of which there was evidence, and so was not at all causally related to the unusual strain of his work. If that were all the expert medical evidence present, we would, perhaps, agree that it falls short of that quantum needed to sustain a finding of causal relationship (see Matter of Lesnik v. National Carloading Corp., 309 N.Y. 958). However, it is not. There is in addition the report of the impartial heart expert designated by the board to examine Schechter and render an opinion on the issue of causation. It was his unqualified opinion that “ the myocardial infarction was directly related to the intense emotional and physical strain the patient had engaged in prior to the onset of the occlusion.” (Emphasis supplied.) In short, he reported that the heart attack suffered by Schechter on March 1, 1955 was directly related to the unusual exertion and strains undergone by him in. the seven weeks prior thereto, viz., the unusual exertion of the increased trial activity in his work as trial counsel. This combined medical evidence of the impartial expert and claimant’s own expert was sufficient to sustain a finding of fact by the board that the unusual exertion performed by claimant prior to his attack was a competent producing cause of the myocardial infarction. This is so even though there was present other expert medical evidence which conflicted with such a conclusion for our courts “cannot pass upon scientific questions when experts have expressed conflicting opinions.” (Matter of Altschuller v. Bressler, 289 N.Y. 463, 467; see, also, Matter of Sleator v. National City Bank, 309 N. Y. 708, supra; Matter of Riccobono v. Continental Cas. Co., 2 A D 2d 718, motion for leave to appeal denied 2 N Y 2d 705.) As we said in Matter of Carpenter v. Sibley, Lindsay & Curr Co. (302 N. Y. 304) at pages 306 and 307: “it was within the power of the Workmen’s Compensation Board to decide whether in point of fact the testimony of the claimant’s physician—notwithstanding some shortage of agreement within itself—nevertheless established a causal relationship between the claimant’s routine occupation and the harm that happened to her. (Workmen’s Compensation Law, § 20. See Williams v. Delaware, L. & W. R. R. Co., 155 N.Y. 158, 162-163; Cannon v. Fargo, 222 N.Y. 321, 325; Loewinthan v. Le Vine, 299 N. Y. 372, 377-378.) ” *513 The evidence presented here was such that a reasonable mind might accept as adequate to support the conclusion reached by the board. That being so, it follows that the decision of the board must be sustained (Matter of Kopec v. Buffalo Brake Beam-Acme Steel & Malleable Iron Works, 304 N.Y. 65, 71, supra; Workmen’s Compensation Law, § 20).
The order of the Appellate Division should be reversed and the decision and award of the Workmen’s Compensation Board reinstated.
Judges Desmond, Dye, Froessel and Burke concur with Chief Judge Conway; Judges Fuld and Van Voorhis dissent and vote to affirm upon the ground that the record reveals no accident as that term is used in the Workmen’s Compensation Law:
Order reversed and award of the Workmen’s Compensation Board reinstated, with costs in this court and in the Appellate Division.