## No. 26890

**Margaret L. Edwards, Widow of Ralph Edwards, Jr., and Jessica Lynn Edwards, a minor, by and through her next friend and mother, Margaret L. Edwards v. Andrew Price and Straight Creek Constructors, Gibbons and Reed Construction Co., Kemper Construction Co., Western Paving Company and Al Johnson Construction Co.**

(550 P.2d 856)

Decided June 1, 1976.                              Rehearing denied June 28, 1976.

George A. Hinshaw, J. Christian Wieland, for plaintiffs-appellants.

Sheldon, Bayer, McLean and Glasman, Richard C. McLean, for defendants-appellees.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This appeal by plaintiffs arises out of an entry of summary judgment in a negligence action in favor of the defendants on the basis that the action was barred because of the statute which provides that an injured employee of a subcontractor may not bring an action against the general contractor. Section 8-48-101, C.R.S. 1973.[1] Plaintiffs contend that the

---

[1] Formerly C.R.S. 1963, 81-9-1; as amended, section 8-48-101, C.R.S. 1973 (1975 Supp.).

summary judgment was improperly granted, that they were entitled to judgment as a matter of law, and that section 8-48-101, C.R.S. 1973, is unconstitutional as a denial of equal protection. We do not agree, and affirm the judgment of the trial court.

On November 27, 1971, Ralph J. Edwards was killed when a truck driven by defendant Andrew Price ran over him. At the time of the accident, both men were employed in the construction of the Straight Creek Tunnel.

Defendant Price was employed by defendant Straight Creek Constructors (SCC).[2] Defendant SCC consisted "of four individual contractors who have joined together under the name of Straight Creek Constructors to construct the Straight Creek Tunnel."[3] The four contractors referred to are named defendants.

The decedent was employed by Jelco, Inc., which was a subcontractor of SCC for electrical work on the tunnel. The decedent's survivors filed a workmen's compensation claim, which was paid either by Jelco, Inc., or its insurance carrier.

Subsequently, the survivors, as plaintiffs, commenced the negligence action which is the subject of this appeal. The defendants' answer denied negligence, asserting that the decedent was contributorily negligent, and that in any event the negligence action was barred by section 8-48-101, C.R.S. 1973.

The defendants then filed a motion for summary judgment. They also answered plaintiffs' interrogatories and requests for admission, and responded to motions for the production of documents.

Based upon this record, the trial court granted the motion for summary judgment in favor of the defendants as a matter of law, holding that under the facts of the case the action was barred by section 8-48-101, C.R.S. 1973. Plaintiffs then perfected this appeal.

## I. SUMMARY JUDGMENT

C.R.C.P. 56(c) provides that a summary judgment shall be rendered ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show *that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law*." (Emphasis added.)

Plaintiffs contend that a summary judgment was improper because there were two material facts in dispute and, alternatively, that even if the facts were uncontroverted, they were entitled to judgment as a matter of law.

---

[2]Although plaintiffs attempted to establish that Price was not employed by SCC, their complaint and other documents in the record reveal the existence of such an employment relationship.

[3]This statement is quoted from plaintiffs' complaint.

### No Genuine Issue as to Material Facts

Plaintiffs contend that the existence of the following two factual matters precluded the summary judgment: (1) the decedent's employment status, and (2) the business relationship of defendants. The gist of plaintiffs' argument is that because these two issues involved factual matters, a summary judgment was improper.

■ Plaintiffs' argument misapprehends the nature of summary judgment. A summary judgment is proper, even when factual matters are involved, if the record indicates that the factual matters are not in dispute.

The record in the present case shows that the defendants met their burden of clearly demonstrating the absence of a genuine issue of fact as to the two factual matters noted by plaintiffs. *Primock v. Hamilton*, 168 Colo. 524, 452 P.2d 375 (1969); *O'Herron v. State Farm Mutual Auto. Ins. Co.*, 156 Colo. 164, 397 P.2d 227 (1964).

Regarding the decedent's employment status, plaintiffs' complaint expressly states that at the time of the accident, the decedent was employed as an electrical maintenance worker by Jelco, Inc., a subcontractor who contracted electrical maintenance work on the Straight Creek Tunnel. This statement of fact is not controverted anywhere in the record.

Regarding the business relationship of the defendants, plaintiffs' complaint states that "Straight Creek Constructors consists of four individual contractors who have joined together under the name of Straight Creek Constructors to construct the Straight Creek Tunnel." Other documents in the record support this factual assertion,[4] which was likewise not controverted in the record.

### Judgment as a Matter of Law

Based upon the uncontroverted facts, the defendants were entitled to a judgment as a matter of law. The applicable law is stated in section 8-48-101, C.R.S. 1973,[5] which provides:

"(1) Any person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be an employer as defined in article 40 to 54 of this title and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees. The employer, before commencing said work, shall insure and keep insured his liability as provided in said articles, and such lessee, sublessee, contractor, or subcontractor, as well as any employee thereof, shall be deemed employees as defined in said

---

[4]This factual description of the business relationship of the defendants is distinguished from the legal characterization of the relationship, which is discussed in the next section of this opinion.
[5]As amended, 8-48-101, C.R.S. 1973 (1975 Supp.).

articles. The employer shall be entitled to recover the cost of such insurance from said lessee, sublessee, contractor, or subcontractor, and may withhold and deduct the same from the contract price or any royalties or other money due, owing, or to become due said lessee, sublessee, contractor, or subcontractor.

"(2) If said lessee, sublessee, contractor, or subcontractor is himself an employer in the doing of such work and, before commencing such work insures and keeps insured his liability for compensation as provided in articles 40 to 54 of this title, neither said lessee, sublessee, contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind, including actions under section 8-52-108, against the person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof."

■ The record discloses SCC affirmatively asserted that it was a joint venture composed of the other four defendant construction companies.[6] The undisputed facts in the record support this conclusion of law because the following three criteria of a joint venture are satisfied: (1) joint interest in property among the alleged joint venturers, (2) express or implied agreement to share in profits or losses of the venture, and (3) actions and conduct showing cooperation in the project. *Breckenridge Co. v. Swales Management Corp.*, 185 Colo. 160, 522 P.2d 737 (1974).

The record reveals the following undisputed facts:

— The truck involved in the accident was owned by and titled in the name of SCC;

— Defendant Price was an employee of SCC, and was paid by check issued by SCC;

— SCC was established as a joint venture by a written agreement between the four defendant contractors;

— Jelco, Inc.'s subcontract agreement was made by the four defendant contractors "d/b/a Straight Creek Constructors;"

— The contract with the highway department for the construction of the tunnel was made in the name of the four defendant contractors as a joint venture;

— SCC was paid directly by the highway department under the construction contract; and

— Plaintiffs' complaint characterizes SCC as "four individual contractors who have joined together under the name of Straight Creek Constructors to construct the Straight Creek Tunnel."

---

[6]Gibbons and Reed Construction Co., Kemper Construction Co., Western Paving Co., and Al Johnson Construction Co.

These facts compel the legal conclusion that SCC was a joint venture.

■ We hold that a joint venture falls within the meaning of the term "company" in section 8-48-101, C.R.S. 1973. *See Breckenridge Co. v. Swales Management Corp., supra; Snyder v. Indus. Comm'n,* 138 Colo. 523, 335 P.2d 543 (1959). Therefore, as a "company" engaged in the business of constructing a tunnel by contracting out part of the work to Jelco, Inc., SCC was a statutory employer of the decedent under section 8-48-101, C.R.S. 1973.

As a statutory employer, SCC was liable for workmen's compensation benefits to the decedent's survivors if Jelco, Inc., had failed to obtain workmen's compensation insurance coverage.[7] However, the survivors received their workmen's compensation benefits from Jelco, Inc., and as noted above, the statute provides that under those circumstances the survivors cannot maintain a negligence action against SCC or any of its principals. The trial court properly entered judgment in favor of the defendants.[8]

## II. EQUAL PROTECTION

While we considered and disposed of an equal protection challenge to section 8-48-101, C.R.S. 1973, in *O'Quinn v. Walt Disney Productions, Inc.,* 177 Colo. 190, 493 P.2d 344 (1972), the basis of plaintiffs' present equal protection challenge differs sufficiently from the challenge raised in *O'Quinn* to warrant some discussion.

In *O'Quinn* we held that the creation of the classification of statutory employers and employees under section 8-48-101, C.R.S. 1973, was not a denial of equal protection. In this case, plaintiffs' argument is narrower.

Plaintiffs note that the statute does not bar negligence actions by employees of one subcontractor against another subcontractor, *Krueger v. Merriman Electric,* 29 Colo. App. 492, 488 P.2d 228 (1971), nor negligence actions by employees of the general contractor against a subcontractor. *Frohlick Crane Service v. Mack,* 182 Colo. 34, 510 P.2d 891 (1973). However, plaintiffs point out that under the present statute[9] employees of a subcontractor are barred from bringing an action against the general contractor, and they contend that this classification denies them equal protection of the laws.

---

[7]The four principals were jointly and severally liable for any workmen's compensation benefits assessed against SCC. *Snyder v. Indus. Comm'n, supra.*

[8]Plaintiffs do not address separately the issue of defendant Price's liability as distinguished from the liability of Price's employer, SCC. *See Hamm v. Thompson,* 143 Colo. 298, 353 P.2d 73 (1960). We therefore assume, without deciding, that plaintiffs concede the judgment as to defendant Price was proper.

[9]Prior to 1963, the statute provided that the general contractor could be sued for negligence by an injured employee of a subcontractor if the subcontractor was properly insured. *See e.g., Thomas v. Farnsworth Chambers Co.,* 286 F.2d 270 (10th Cir. 1960). In 1963, the statute was amended to preclude such a suit whether or not the subcontractor was properly insured.

■ The challenged classification is not based upon "a suspect classification," nor does it infringe upon "a fundamental right." Therefore, under general constitutional principles, the statutory classification is valid if it satisfies the "rational basis" test. *Stevenson v. Indus. Comm'n*, 190 Colo. 234, 545 P.2d 712 (1976). This test requires only that the classification bear a reasonable relationship to a legitimate state objective.

The public policy upon which the Workmen's Compensation Act is founded derives from the need to provide monetary relief for workmen injured in the course of their employment, regardless of the negligence of the employer or the lack of negligence on the part of the employee. *O'Quinn v. Walt Disney Productions, Inc., supra.* The underlying concept is one of "no fault." It is further the policy in Colorado and the great majority of states to make the more financially solvent general contractor ultimately responsible for workmen's compensation benefits arising out of injuries to employees of all subcontractors. 2A *A. Larson, Workmen's Compensation Law* § 72.31 (1973 ed.). These policy interests are embodied in section 8-48-101, C.R.S. 1973, and are a legitimate state objective.

In return for this ultimate statutory liability, the general contractor is relieved of any liability for "contribution or action of any kind, including actions under section 8-52-108." Section 8-48-101(2), C.R.S. 1973. The subcontractors are not subjected to this ultimate liability for injuries to employees of the general contractor or other subcontractors. Thus, the subcontractors are not immunized from common-law actions by employees of the general contractor or other subcontractors.

It is the general contractor to whom the employees of all subcontractors may look for workmen's compensation if their immediate employer is uninsured or financially irresponsible. This distinguishes the general contractor from the subcontractor and is the rationale which sustains the different treatment accorded general contractors by the statute.

■ We hold that the immunity granted to a general contractor as a statutory employer under section 8-48-101, C.R.S. 1973, from negligence actions by an injured employee of a subcontractor does not effect a denial of equal protection because it bears a reasonable relationship to a legitimate state objective.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent.

I can see no rational basis for permitting employees of the principal contractor to sue at common law for injuries received from the negligence of a subcontractor, and not permit employees of the subcontractor to sue

at common law for injuries received from the negligence of the principal contractor.

I would hold the statute unconstitutional by reason of an arbitrary classification which denies equal protection.