## No. C-1425

**City and County of Denver, and Division of State Compensation Insurance Fund v. Industrial Commission of Colorado, and Thomas W. Dinsmoore**

(579 P.2d 80)

Decided May 30, 1978.

James A. May, Francis L. Bury, Robert S. Ferguson, for petitioners.

Pferdesteller, Vondy, Horton & Worth, P.C., Anthony L. Worth, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Petitioners, City and County of Denver and Division of State Compensation Insurance Fund, seek review of a judgment by the court of appeals affirming an order by respondent, Industrial Commission, which granted respondent Thomas Dinsmoore a ten percent permanent partial disability award, payable on a weekly basis, until the total sum of $7,417.50 has been paid. Dinsmoore is a sergeant and a 25-year veteran of the Denver Police Department. *See City and County of Denver, et al. v. Industrial Commission, et al.,* 40 Colo. App. 202, 573 P.2d 562 (1977). We remand with directions.

The following facts are undisputed: From August 1, 1971, to October 16, 1974, there had been no promotions to sergeant because the Denver police promotional system had been the subject of litigation. Consequently, there was a shortage of sergeants in Dinsmoore's unit, and those available, including Dinsmoore, had been working overtime and assuming duties not usually assigned to sergeants.

In addition to the longer hours and extra work, for a three and one-half month period immediately preceding his heart attack, Dinsmoore was in charge of supervising arrangements for busing to achieve desegregation

in Denver public schools within his district. This assignment, not usually given to a sergeant, entailed meetings on almost a daily basis. The meetings often ran late into the night.

Due to the extra work and responsibility with which he was charged during November 1974, Dinsmoore worked for twelve days of his planned fifteen vacation days. Although he was paid overtime for such work, Dinsmoore's superior officers testified that Dinsmoore did not work overtime for pecuniary reasons but, rather, at the request of the police department. The officers, including the medical coordinator for the City and County of Denver, also testified that Dinsmoore was under tremendous pressure because he was working in unaccustomed areas and in a command position.

On December 1 and 2, Dinsmoore experienced extreme chest pain and difficulty with memory and manual dexterity. On December 2, he tried unsuccessfully to see his cardiologist. That afternoon, as he was going back to the station, he responded to a call outside his sector concerning a stickup by two armed men.

On December 3, 1974, Dinsmoore reported for work and shortly after his arrival began to suffer chest pain. He was taken to the hospital where he went into cardiac arrest due to a myocardial infarction. He was resuscitated and remained in the hospital for eighteen days. His treating physician diagnosed coronary heart disease due to previously diagnosed arteriosclerosis. Dinsmoore had been following a program of diet and exercise since 1973 to reduce the risk of heart attacks.

Dinsmoore remained in the hospital for eighteen days. He returned to work on a part-time basis two months later. Six weeks after rejoining the force, he was working full time.

Dinsmoore's treating physician did not testify before the Commission in person. His report furnished to the Commission indicated that Dinsmoore's heart attack "was precipitated by unusual circumstances requiring presence of mind, excitement [and] tension, as well as fear, especially in the presence of criminals with weapons at the place of the stickup."

When Dinsmoore was examined by petitioner's physician, Dr. Mutz, he was recovering from a lapse of memory due to the heart attack. Dr. Mutz, in taking Dinsmoore's medical history, failed to inquire as to the existence of stress prior to his heart attack. When asked about the stickup call, Dinsmoore told Dr. Mutz that it was not unusual for him to have to respond to such a call.

The petitioners' expert witness testified that Dinsmoore's heart attack was not job-precipitated, but might have been job-related. He opined that while stress is a factor in cardiac risk, Dinsmoore's heart attack was due to normal wear and tear. However, he did testify that Dinsmoore's arteriosclerosis was a preexisting condition which would render him more susceptible, in a given situation, to a heart attack precipitated by stress.

The referee reviewed the evidence and made the following finding:
"IN VIEW OF THE ABOVE [evidence], the Referee finds that the claimant's myocardial infarction and cardiac arrest were precipitated by the unusual events prior to December 3, 1974 which aggravated his pre-existing heart condition; that said aggravation was an accident arising out of and within the scope of his employment and that the claimant has sustained permanent partial disability of 10% as a working unit fairly attributable to said accident. . . ."

The Industrial Commission affirmed the order, and, on appeal, it was affirmed by the court of appeals. It is from this affirmance that petitioners appeal to this court.

I.

The petitioners' principal contention here is that the referee failed to make the findings of fact required by law. Section 8-53-106(1), C.R.S. 1973, requires a referee to "make findings of fact which shall include all evidentiary and ultimate facts necessary to support such order." *See also Womack v. Industrial Commission,* 168 Colo. 364, 451 P.2d 761 (1969). Section 8-41-108(2), C.R.S. 1973,[1] provides:

"'Accident' or 'injury' shall not be construed to include disability or death caused by heart attack unless it is shown by competent evidence that such heart attack was proximately caused by an unusual or extraordinary overexertion arising out of and within the course of the employment."

This requires a showing that a heart attack, in order to be a compensable accident under the Workmen's Compensation Laws,[2] be proximately caused by an unusual or extraordinary overexertion arising out of a claimant's employment. Petitioners contend that the findings of fact were inadequate because the referee failed to specify which "unusual events" precipitated Dinsmoore's heart attack, thus depriving petitioners of a meaningful review on the merits.

In *Womack v. Industrial Commission, supra,* we emphasized the necessity for the referee to make specific findings as to ultimate facts as well as evidentiary facts in order to satisfy the predecessor of section 8-53-106. Ultimate facts are the substance of the conclusions drawn from the evidence.

Section 8-41-108(2) does not, in and of itself, require a specific finding of unusual or extraordinary overexertion; it merely requires such a showing by competent evidence. *However,* section 8-41-108(2), which is definitional, must be construed in conjunction with section 8-53-106, which is procedural. Therefore, a specific finding of unusual or

---

[1] Now section 8-41-108(2.5), C.R.S. 1973 (1976 Supp.).
[2] *See* section 8-41-108(1), C.R.S. 1973.

extraordinary overexertion as an ultimate fact must be made by the referee or the Commission. Applying this rule to the instant case, the referee's apparent equation of "unusual events" with unusual or extraordinary overexertion is insufficient as a finding of an ultimate fact.[3]

A reviewing court can only determine whether the evidence supports the ultimate facts which have been found by the referee. *See Metros v. Denver Coney Island,* 110 Colo. 40, 129 P.2d 911 (1942).

## II.

The question of whether evidence of job stress, *e.g.,* physical strain accompanied by emotional or mental tension, is sufficient to support an award for a heart attack under the Colorado Workmen's Compensation Act is one of first impression in this court. We hold that it is sufficient, as have the other jurisdictions which follow the rule as to unusual overexertion. *See, e.g., Schecter v. State Ins. Fund,* 6 N.Y.2d 506, 160 N.E.2d 901, 190 N.Y.S.2d 656 (1959); *McWhorter v. South Carolina Dept. of Insurance,* 252 S.C. 90, 165 S.E.2d 365 (1969); *Louderback v. Dept. of Labor and Industries,* 14 Wash. App. 931, 547 P.2d 889 (1976); *cf. Snuggs v. Steel Haulers,* 501 S.W.2d 481 (Mo. 1973); *Claim of Major v. New York State Court of Claims,* 31 App. Div.2d 993, 297 N.Y.S.2d 768, *motion for leave to appeal denied,* 24 N.Y.2d 740, 302 N.Y.S.2d 1025 (1969). *See also* 14 *A. Larson, Workmen's Compensation Law* §38.30.

We also hold that unusual or extraordinary overexertion, as used in section 8-41-108(2), does not require that the work causing the attack be different in nature from the employee's usual work. The unusual overexertion doctrine must be applied according to the employee's work history rather than the work patterns of his profession in general. *Blood v. Industrial Comm.,* 165 Colo. 532, 440 P.2d 775 (1968). *See also Schecter, supra; Hamilton v. Procon,* 434 Pa. 90, 252 A.2d 601 (1969); *McWhorter, supra; Mor, Inc. v. Haverlock,* 566 P.2d 219 (Wyo. 1977).

The cause is returned to the court of appeals with directions to remand to the Industrial Commission for the purpose of making a finding as to whether the heart attack which the claimant Dinsmoore suffered was the result of extraordinary or unusual overexertion in the course of his employment.

---

[3] In *Denver v. Phillips, Sr.,* 166 Colo. 312, 443 P.2d 379 (1968), we held that the referee's failure to use the specific word "overexertion" did not vitiate his decision that there had been a compensable heart attack. However, that case was decided on the basis of existing case law. No statutory provision comparable to section 2-41-108(2) was then in effect.

For a history of Colorado's requirement of a showing of unusual exertion, *see* the opinions by Justice Groves in *Public Service Co. of Colo. v. Industrial Commission,* 189 Colo. 153, 538 P.2d 430 (1975); *T&T Loveland Ranch v. Claimants,* 178 Colo. 65, 495 P.2d 546 (1972); *T&T Ranch v. Bourn,* 173 Colo. 267, 477 P.2d 457 (1970).

It is further ordered, in the interest of judicial economy that, since the evidence supports a finding of unusual or extraordinary overexertion, if the Industrial Commission makes such a finding, the judgment of the court of appeals shall stand affirmed; on the other hand, if the Industrial Commission makes a contrary finding, the case shall stand reversed.