**CLAIMANTS IN the MATTER OF the DEATH OF Don J. KOHLER, Petitioners,**

**v.**

**INDUSTRIAL COMMISSION OF COLORADO, Department of Labor and Employment, State of Colorado; Nielson's, Inc., and Transportation Insurance Company, Respondents.**

**No. 82CA0052.**

Colorado Court of Appeals, Division 1.

April 28, 1983.

Rehearing Denied May 26, 1983.

Certiorari Denied Oct. 31, 1983.

Robert C. Dawes, Durango, Jerry L. Bean, Cortez, Marcus, Ruck, Flynn & Wells, P.C., Benjamin Marcus, Muskegon, Mich., for petitioners.

Hall & Evans, P.C., Fredric A. Ritsema, Gordon Vaughan, J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Alice Parker, Asst. Atty. Gen., Denver, for respondents.

ENOCH, Chief Judge.

Petitioners, as surviving dependents of decedent, seek review of the final order of the Industrial Commission affirming the hearing officer's denial of benefits to petitioners on their claim arising from the decedent's death by a heart attack. We affirm.

Decedent, Don J. Kohler, was employed by respondent Neilson's, Inc. (employer), from 1972 until his death in 1979. Employer was primarily engaged in supplying crushed rock to construction sites, which it did through three rock crushing operations in Colorado and New Mexico. For most of his career with employer, decedent was a superintendent of one of the rock crushing operations. Approximately three months prior to his death, he was promoted to general superintendent of all three crushers.

On Saturday, July 14, 1979, decedent travelled from Cortez, Colorado, to the crusher at Shiprock, New Mexico, to supervise the operation in the absence of the regular superintendent, who was ill. At Shiprock, decedent attended to various supervisory duties. Upon learning that the employees were in need of drinking water, decedent offered to drive into town to get more water. He was later found unconscious in his car, and was transported to a local hospital, where he subsequently died.

Petitioners applied for workmen's compensation death benefits. Affirming a referee's order, the Industrial Commission denied benefits on the basis that the exertion of claimant's job at the time of the heart attack was not "unusual" and that therefore the heart attack was not an "accident" or "injury" within the meaning of the Workmen's Compensation Act. The critical portion of the referee's findings is as follows:

"The referee finds that the activities engaged in by the claimant during the week preceeding his death were the same as those he frequently encountered and experienced in his job. Therefore, the exertion of his job was not unusual, and his heart attack is not an accident or an injury within the meaning of C.R.S., 1973, 8–41–108."

I.

On review, the petitioners first contend that the evidence before the hearing officer established that decedent's activities prior to his death constituted "unusual exertion" within the meaning of the workmen's compensation act, and that therefore decedent's death is compensable. We disagree.

Section 8–41–108(2.5), C.R.S.1973 (1982 Cum.Supp.), provides as follows:

"'Accident,' 'injury,' and 'occupational disease,' shall not be construed to include disability or death caused by heart attack unless it is shown by competent evidence that such heart attack was proximately caused by *unusual exertion* arising out of and within the course of the employment." (emphasis supplied)

In *City & County of Denver v. Industrial Commission*, 195 Colo. 431, 579 P.2d 80 (1978), the Supreme Court, construing the "unusual or extraordinary overexertion" standard then in effect, upheld an award of benefits to a police sergeant who had suffered a heart attack during a period of unusually long hours and extra work, with the following language:

"The unusual overexertion doctrine must be applied according to the emplloyee's work history rather than work patterns of his profession in general."

We view this language as being equally applicable under the present statutory standard of "unusual exertion."

Thus, the decedent's activities near the time of the heart attack must be compared to his normal *work* activities in order to determine if the former were unusual. *Townley Hardware Co. v. Industrial Commission*, 636 P.2d 1341 (Colo.App.1981).

In the instant case, the hearing officer received evidence of decedent's work histo-

ry in testimony from a variety of witnesses, including decedent's wife and son, and several co-workers. Decedent's wife testified that there was nothing unusual about the stress decedent was under during the week before his death. Several co-workers testified that decedent took his promotion "in stride," that there was no difference in the way he handled his job before or after the promotion, and that on the day he died, decedent undertook no particularly stressful activity nor any physical labor. On the other hand, decedent's son testified that decedent was "very agitated" and "preoccupied" during the week before his death. Another employee stated that during the same week, decedent was "more intense" and that "nothing pleased him." Based upon this conflicting evidence, the hearing officer made the findings set out above.

 If supported by substantial evidence, findings of the Commission based on conflicting evidence are binding on review. *Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850 (Colo.1983). Substantial evidence supports the findings here.

### II.

 We also reject petitioners' contention that the applicable law in Colorado requires only that the stress experienced by the decedent prior to this death be more than the stress of everyday life in order to constitute "unusual exertion" within the meaning of the Act.

As discussed above, in applying the "unusual exertion" test, the proper focus is upon the activities and exertion of the employee at the time of his heart attack when compared to his normal work activities and the usual exertion attendant thereon. *Townley Hardware Co. v. Industrial Commission, supra; see City & County of Denver v. Industrial Commission, supra.* Hence, petitioners' contention in this regard is without merit.

### III.

Petitioners' final contention is that insofar as § 8–41–108(2.5), C.R.S.1973 (1982 Cum.Supp.) requires a different or more severe standard for establishing that a heart attack is a compensable "accident" or "injury" than is required for other types of accidents or injuries, such provision denies petitioners equal protection of the law and is therefore unconstitutional. We do not agree.

 As in all equal protection cases, this court must first determine the standard to be used in assessing the validity of the challenged legislation. *Olson v. Public Service Co.,* 190 Colo. 512, 549 P.2d 780 (1976). Because the right to disability benefits is not a fundamental right, and because the class of employees disabled by heart attacks is not a suspect class, the rational basis test must be applied. *See Stark v. Zimmerman,* 638 P.2d 843 (Colo.App.1981); *Stevenson v. Industrial Commission,* 190 Colo. 234, 545 P.2d 712 (1976).

 That test requires that the state need only show that the challenged provision is rationally related to a legitimate state interest. *Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982); *Fritz v. Regents of the University of Colorado,* 196 Colo. 335, 586 P.2d 23 (1978). Thus, classes can be treated differently, so long as this unequal treatment is based on reasonable differences. *Bushnell v. Sapp,* 194 Colo. 273, 571 P.2d 1100 (1977). In applying that test, the statutory scheme may be invalidated only if no set of facts can reasonably be conceived to justify it. *Millis v. Board of County Commissioners,* 626 P.2d 652 (Colo.1981). Further, every statute is presumed constitutional unless proven beyond a reasonable doubt to be invalid. *Turner v. Lyon,* 189 Colo. 234, 539 P.2d 1241 (1975).

In applying the rational basis test, therefore, we must first identify the legitimate state purpose which this legislation purportedly furthers, and then determine whether such an objective is rationally furthered by the scheme or system created by the legislation. *See Lujan v. Colorado State Board of Education,* 649 P.2d 1005 (Colo.1982).

 The purpose of the act is to provide monetary relief to employees who, while

performing services for the employer, suffer disability or death as a result of an accident or injury arising out of and in the course of their employment. Section 8–52–102, C.R.S.1973 (1982 Cum.Supp.); *see Bellendir v. Kezer, supra.* This is a legitimate state purpose. *Edwards v. Price,* 191 Colo. 46, 550 P.2d 856 (1976). In order to effectuate this purpose, the General Assembly, in enacting § 8–41–108, C.R.S.1973 (1982 Cum. Supp.), has chosen to define the terms "injury" and "accident" and to limit the applicability of those terms to heart attack cases where "unusual exertion" is shown. The General Assembly could have reasonably concluded that because of the inherent difficulty in ascribing the cause of many heart attacks to particular events or circumstances, a claimant, in order to receive benefits, should be required to show the presence of unusual exertion in the performance of his employment duties, and that such exertion is causally related to the heart attack.

While this legislative limitation is arbitrary in the sense that the General Assembly might have chosen some other standard by which to review heart attack cases, our inquiry in the instant case is limited to whether this statute, as presently constituted, furthers the purposes of the Act in a rational manner. *Bellender v. Kezer, supra.* We conclude that it does.

This view is consistent with that taken by the U.S. Supreme Court:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because '. . . in practice it results in some inequality.'"

*Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1969) (quoted in *Manor Vail Condominium Association v. Town of Vail,* 199 Colo. 62, 604 P.2d 1168 (1980)).

Order affirmed.

KIRSHBAUM, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

The order which we review here contains the following findings of fact:

"[Kohler] had been employed by the respondent since January 31, 1972. For a number of years, he was classified as a crusher superintendent where he supervised the operation of one stone crusher. For approximately three months preceeding [sic] his death, he was a general crusher superintendent, having supervisory responsibility over crushers located in Craig, Colorado; Shiprock, New Mexico; and Gallop, New Mexico. *It was unanimously agreed by all witnesses that the decedent was an intense person who was dedicated to his job and took his responsibilities seriously. He was a perfectionist and a 'company man.' His working hours and working days both as a crusher superintendent and as a general crusher superintendent, were set by the work that needed to be done.* Both before and after his promotion to general crusher superintendent, *his work week was consistently more than 40 hours and his working days were consistently more than five days a week.* It was commonplace for the decedent to be on the telephone in the evening hours engaged in company business.

"The crusher in Craig, Colorado, was set up May 15, 1979. The operation had daily problems with size of material being crushed which would cause frequent shutdowns of the crusher. The job at Craig was running above estimated cost and was, therefore, losing money. The frequent crusher shutdowns were contributing to the loss. There was no evidence that the decedent was censored [sic] or otherwise blamed for these problems. In the week preceeding [sic] his death, the decedent was in Craig for part of the week. On Friday, July 13, he returned to Cortez with Mr. Gene Cox who is the superintendent of operations for the respondent employer. They engaged in company business until approximately

7:30 P.M., at which time the decedent advised Mr. Cox that he would, on Saturday, July 14, go to Shiprock and oversee the operation of the crusher since the crusher superintendent was ill. On the evening of July 13, the decedent had his dinner and complained of a sore throat. He was vomiting rather heavily but did have several telephone conversations concerning business activities. He was experiencing chest discomfort. On the morning of July 14, he did go to Shiprock and arrived at the location of the crusher operation. Shortly thereafter, he left to get some water for the crew and later was found in the vehicle parked beside the road. Death followed after he was transferred to the hospital." (emphasis added)

The cause of death was found to be a heart attack. An award of compensation was denied based on the following conclusions:

"In determining whether there was unusual exertion, which is a question of fact, the exertion in question is measured against the work history of the decedent, and the claimant must show that the causative exertion was more than the exertion attendant upon the discharge of the decedent's normal duties. From the above finding of fact, [it is concluded] that *the decedent's employment, both as a crusher superintendent and a general crusher superintendent, was chronically stressful.* Therefore, with respect to decedent, the benchmark measuring unusual exertion was at the moderately stressful level and *only acute stress would be unusual exertion.*" (emphasis added)

The Workmen's Compensation Act must be liberally construed to accomplish its beneficent social and protective purposes. *Claimants in re Death of Hampton v. Director Division of Labor,* 31 Colo.App. 141, 500 P.2d 1186 (1972). Further, in enacting a statute, it must be presumed that a just and reasonable result is intended. Section 2–4–201(1)(a), C.R.S.1973 (1980 Repl.Vol.).

*Mountain Mobile Mix v. Gifford,* 660 P.2d 883 (Colo.1983).

Pursuant to § 8–41–108(2.5), C.R.S.1973 (1982 Cum.Supp.), a claimant must show by competent evidence that the subject heart attack was proximately caused by unusual exertion arising out of and within the course of the employment. To construe this statute so as to preclude recovery based on continuous unusual exertion by a highly dedicated and devoted employee, because that employee always exerts himself beyond that required in the discharge of his duties, does violence not only to the plain language of the statute, but also to the long recognized rule that the Workmen's Compensation Act is to be liberally construed to accomplish its humanitarian purposes of assisting injured workers and their families. *See Claimants In re Death of Garner v. Vanadium Corp.,* 194 Colo. 358, 572 P.2d 1205 (1977).

The majority's reliance on *Denver v. Industrial Commission,* 195 Colo. 431, 579 P.2d 80 (1978) is misplaced. In both that case and *Beaudoin Construction Co. v. Industrial Commission,* 626 P.2d 711 (Colo.App.1980), the rule quoted by the majority was fashioned so as to cover exertion by an employee in the performance of acts not considered unusual for employees similarly engaged. Here, however, the employee's work pattern was, in and of itself, one of unusual exertion, and therefore, his heart attack constituted a compensable injury if causation is established by competent evidence. *Denver v. Industrial Commission, supra,* which adopts the rule that evidence of job related stress may support an award for a heart attack, does not preclude recovery if the job stress associated with unusual exertion is chronic rather than acute.

I would therefore set aside the order making no award and remand the cause to the Commission with directions to make findings, using objective standards, of whether decedent was in fact unusually exerting himself and whether there was job related stress associated therewith which was the cause of the heart attack.