CLAIMANT IN the MATTER OF James Ernest CARR, (Deceased), Petitioner,

v.

The INDUSTRIAL COMMISSION OF the STATE OF COLORADO; State Compensation Insurance Fund and the Division of Water Resources/State Engineer, Respondents.

No. 84CA0944.

Colorado Court of Appeals, Div. III.

June 13, 1985.

Rehearing Denied July 18, 1985.

Certiorari Denied Nov. 12, 1985.

Briscoe, Stanway, Clay, Dodson & Harper, P.C., Steven K. Harper, Hotchkiss, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, Asst. Atty. Gen., Denver, for respondent Indus. Com'n.

Paul Tochtrop, Denver, for respondents State Compensation Ins. Fund and the Div. of Water Resources/State Engineer.

METZGER, Judge.

In this workmen's compensation case, Margaret Carr, (claimant) seeks review of a final order of the Industrial Commission which determined that a fatal heart attack suffered by her husband, James Carr, was not the result of unusual exertion and thus was not compensable. We set aside the order and remand.

Carr was employed by the Division of Water Resources State Engineer as a water commissioner; his duties were to administer the flow of water in the Leroux Creek Basin. Additionally, he was employed by the Leroux Water Users Association, and his duties with the Association required him to maintain the reservoirs which provided water to the Leroux Creek Basin.

During the month of July 1982, he was responsible for switching the water for the farmers in the area from decree water to reservoir water according to their established priorities. This entailed turning the water out of the reservoirs, measuring it, and insuring that it flowed properly into the individual ditches in order to reach the various water users. He was required to turn the headgate manually to each reservoir, measure the amount of flow, walk approximately 100 yards down the ditch to check the flow, walk back up to the headgate and adjust it, recheck the water flow by again walking down the ditch, and repeating this process until the proper amount of flow from each reservoir had been achieved. A pipe was necessary to open the headgates, and the pipe that Carr used was a two-inch pipe approximately six to eight feet in length weighing 20 to 25 pounds, which he carried with him during this process.

The reservoirs were located in areas serviced by roads which were described in the

record as being "very rough," containing bog holes and being very muddy in general. It was not uncommon for Carr's truck to become stuck in the mud, and for him to extricate it by himself. Additionally, Carr was required to keep extremely precise paperwork during this particular time of year to insure that the water users were receiving their proper amounts.

On July 19, 1982, the day before he died, Carr began work between 7:30 and 8:00 a.m., intending to check all the decree water that was still running. He returned home 11 hours later, having worked all day in temperatures approaching 100 degrees, except for an hour-and-a-half in mid-afternoon when he had had repair work done on his truck because it was overheating. While waiting for that work to be done, he commented that, "he wasn't feeling good," and that he had a lot of work to do the next day since he had already turned water out of a reservoir at 8,000 feet altitude.

After he ate supper, the only meal he had had since breakfast, he became quite ill and was perspiring heavily. Nevertheless, he performed additional paperwork for almost an hour with respect to his job as water commissioner.

His wife testified that this time of transition required him to work longer hours than usual, and also required additional physical labor. His wife further testified that he was under emotional pressure, was not feeling well, and, as he left for work the morning of July 20, 1982, he told her, "If I can make it through the day, then it won't be so bad." On July 20, for the first time in 1982, he would be administering the flow of both reservoir and decree water, which required his calculations to be more precise than usual.

At approximately 1:30 p.m. on July 20, 1982, James Carr was found lying in his field, dead. He had died from a massive heart attack. He was 60 years old. He had a "bad back," (having undergone back surgery three times), took a great deal of pain medication, and wore a heavy steel brace at all times for his back pain. He had high blood pressure, arthritis, and se-

vere coronary atherosclerosis, and he suffered from emphysema and obesity.

The Industrial Commission approved the referee's findings of fact and conclusions of law, which denied claimant's request for dependent's benefits. Although the referee found that James Carr's heart attack was causually related to his work, he concluded it was not the result of unusual exertion within the meaning of § 8–41–108(2.5), C.R.S. (1984 Cum.Supp.), since the duties Carr performed prior to his death were the usual and normal duties of a water commissioner at that time of year. We conclude that the commission improperly applied the law, and accordingly, set aside the order and remand for allowance of claimant's claim.

■■■ Job stress, *e.g.*, physical strain accompanied by emotional or mental tension, is sufficient evidence of unusual exertion to support an award for a heart attack. *City and County of Denver v. Industrial Commission*, 195 Colo. 431, 579 P.2d 80 (1978). Moreover, "unusual or extraordinary overexertion, as used in § 8–41–108(2), does not require that the work causing the heart attack be different in nature from the employee's usual work. The unusual overexertion doctrine must be applied according to the employee's work history rather than the work patterns of his profession in general ...." *Denver v. Industrial Commission, supra; see also Beaudoin Construction Co. v. Industrial Commission*, 626 P.2d 711 (Colo.App.1981).

■■■ Here, although the hearing officer found that Carr's activities on July 19 and 20, 1982, concerned the usual and normal duties of a water commissioner and were the same duties that Carr had been performing for the previous 20 years, the evidence was uncontradicted that the amount of work performed by Carr on those days required significantly greater physical exertion and involved substantially more emotional stress than did his normal work. Under such circumstances, we conclude that, even though Carr was performing his normal and routine duties, those duties ne-

cessitated an unusual overexertion sufficient to bring his heart attack within the ambit of compensability. *See Stephen Equipment Co. v. Industrial Commission*, 703 P.2d 1332 (Colo.App.1985).

The order is set aside and the cause is remanded to the Industrial Commission with directions to award death benefits to claimant.

STERNBERG and TURSI, JJ., concur.